Argued June 24; reversed July 13, 1937

# WILLAMETTE COLLECTION & CREDIT
# SERVICE *v.* GRAY ET AL.

(70 P. (2d) 39)

*Nicholas Jaureguy*, of Portland (Cake & Cake and Jaureguy & Tooze, all of Portland, on the brief), for appellant.

*Lawrence T. Harris*, of Eugene (Gordon S. Wells and Harris & Bryson, all of Eugene, on the brief), for respondent.

BELT, J.   On December 24, 1924, defendant A. L. Gray and his wife executed a note and mortgage to the appellant Travelers Insurance Company to secure the payment of a loan of $2,500.   The mortgage which was timely recorded constituted a first lien on 71 acres of land in Lane county, Oregon.   Gray defaulted in payment of principal and interest and, in 1935, negotiations were entered into resulting in an agreement whereby Gray and his wife were to execute a deed to the Travelers Insurance Company in consideration of their release from liability for payment under the note and mortgage.   The insurance company, however, asserts that it was also understood and agreed at such time that, before acceptance of the deed and satisfaction of the mortgage, it had the right to examine the abstract of title in its possession to determine whether the land was encumbered by other liens and mortgages.   An examination of the title disclosed, aside from the above-mentioned mortgage, three other mortgages of record, viz, a second mortgage in favor of Commercial Mortgage Security Co.; a third mortgage in favor of the

Bank of Commerce; and a fourth mortgage executed by Gray and his wife, on October 6, 1930, in favor of C. L. Dunn, for $601. The insurance company procured a record satisfaction of the second and third mortgages and they are not involved in this controversy. It is the fourth mortgage which is involved and must be kept in mind.

The deed, dated October 26, 1935, and the satisfaction of the first mortgage, dated November 26, 1935, were executed but not recorded until later as, in order to clear title, it was necessary for the insurance company to secure a release and satisfaction of the Dunn mortgage. Correspondence with Dunn, who lived at Yakima, Washington, resulted in the execution of the release of his mortgage in consideration of the payment of $10. The note and mortgage were not surrendered to the insurance company nor was any request made for Dunn to surrender them. After having obtained the release or satisfaction, the insurance company, on December 4, 1935, believing the title clear, recorded the deed to it from Gray, the satisfaction of its mortgage and the other satisfactions of mortgages.

In August, 1931, C. L. Dunn filed his petition in bankruptcy; a trustee, one C. S. Dillon, was appointed; and the note and mortgage designated above as the fourth mortgage were delivered to such officer without any written assignment thereof. Dunn secured his discharge in bankruptcy and the trustee, in due course, secured an order of the court directing him to sell the accounts and notes receivable in his hands, among which was the Gray note for $601. The order of sale makes no reference to the mortgage securing the payment of such note, but we think the mortgage was included in the sale as incident to the note which it secured. The accounts and notes receivable listed

amounted in the aggregate to $13,099, although as a matter of fact they had but little value. These accounts and notes receivable, including the Gray note, were sold for $25.50 to W. H. Blowers who was engaged in the collection business in the city of Eugene. The sale was confirmed and the note and mortgage were delivered to Blowers. Twenty-three days later Blowers, who retired from the collection business, sold and delivered the note and mortgage to the respondent Willamette Collection & Credit Service, a corporation, for the sum of $30, without any written assignment. Respondent ever since has been in possession of the note and mortgage.

It is interesting to note that C. S. Dillon, who was an executive officer and owned all the stock in the respondent corporation, with the exception of qualifying shares therein, was, at time of sale from Blowers to the corporation, still acting as trustee in bankruptcy. However, no fraud or collusion is charged and we pass without further comment that phase of the case.

Shortly after the insurance company filed the deed and releases of mortgages for record, the respondent commenced the instant suit to foreclose its mortgage, asserting it to be a first lien. From a decree in favor of the plaintiff in accordance with the prayer of the complaint, the Travelers Insurance Company appeals.

It is the theory of the respondent that Dunn had no authority to execute a release or satisfaction of the Gray mortgage for the reason that title to the note and mortgage had previously been acquired by it as a result of the assignment by Dunn of his notes receivable to the trustee in bankruptcy and the subsequent sale and assignment by the purchaser at the bankruptcy sale to the respondent. It is further contended by respondent that the satisfaction and release of the Gray

mortgage by the insurance company and the acceptance of the deed resulted in a merger of title and that, by reason thereof, its mortgage became a first lien on the property.

The principal contentions of the insurance company are: (1) That it had a right, in the absence of any notice of assignment of the mortgage, to rely upon the record that Dunn was the owner thereof and was authorized to satisfy the same; (2) that it is a subsequent purchaser for value without notice of any assignment and therefore the satisfaction of the mortgage by the record owner, by virtue of the statute (§ 54-109, Oregon Code 1930) operated to free the land of the mortgage lien; that, if the above statute is inapplicable and plaintiff has a valid lien, the mortgage of the appellant insurance company should be revived and foreclosed as a superior lien.

It appears from the uncontradicted evidence that the appellant insurance company, at the time it recorded the deed and satisfactions of mortgages, had no actual notice or reason to believe that Dunn had sold or assigned the mortgage which plaintiff asserts. Neither did the appellant have constructive notice of any assignment of the mortgage or of any interest plaintiff had in the land. No record notice of bankruptcy proceedings was filed in Lane county where the land was situated. Appellant undoubtedly relied upon the record owner as having authority to satisfy the mortgage.

■ The vital questions are: Did appellant, acting in good faith and without notice of any assignment of the mortgage, have the right to rely upon what the record disclosed? Or was it, in securing a release of the mortgage by the record owner, obliged to assume the risk of a previous unrecorded assignment of the

mortgage? Was the assignee of the Dunn mortgage required to take a written assignment and record it to preserve its lien as against an innocent purchaser or encumbrancer who deals with the property in reliance upon the public record? It is important to bear in mind that this is not a case between the plaintiff and its assignor of the note and mortgage. Nor is it one between two assignees, one of which is prior in time. It is a contest between an assignee, claiming under an unrecorded assignment, and an innocent purchaser. We might well agree with respondent that, as between it and its assignor, the title to the note and mortgage passed. The more important inquiry, however, is: Will the equitable interest of the plaintiff take precedence over that of the appellant who relied upon the record owner as having authority to satisfy the mortgage? It is plain that both the plaintiff and the appellant have been the victims of a wrongful act on the part of Dunn. Dunn had no right to satisfy the mortgage, at the instance and request of the appellant, when he had previously assigned the note and mortgage to the trustee in bankruptcy, but he had the apparent authority to do so. Which of the two innocent parties must suffer by reason of the wrongful act?

Certainly the natural equities of the case are with the appellant Travelers Insurance Company. Respondent kept the note and mortgage in its possession for more than three years without filing anything of record to show its interest in the land—knowing all the time that Dunn appeared as the record owner of the mortgage and that innocent purchasers or encumbrancers as such might be injured in dealing with him. Respondent, of course, considered its fourth mortgage of little value. It was only when appellant placed its deed and satisfactions of mortgages on record that it under-

took by legal process to transform what was at one time a fourth mortgage into a first lien.

■ It may be conceded that respondent was not obliged to take a written assignment and record it in order to acquire title as between the immediate parties, but we think it was required to do so in order to maintain its lien as against an innocent purchaser. As stated in *Stetler v. Scherrer,* 75 Colo. 500 (226 P. 858) :

"There are statutes of other states which expressly declare that a failure to file for record such instruments renders them void. Our statute does not expressly so declare, but there is no difference, so far as effects the rights of subsequent purchasers without notice, between a statute which declares such instruments void and those declaring that they shall not take effect without a filing for record."

If the rule were otherwise, what certainty or security would there be in dealing with titles in reliance upon public records? Appellant had every reason to believe that it had acquired a clear title when Dunn, as record owner of the mortgage, executed a release or satisfaction.

■ True, as a matter of caution, the appellant might have requested Dunn to produce the note and mortgage, but it was not obliged to do so. Appellant, in securing a release of the mortgage, was dealing with the land and not as payor of the debt: *City Bank of Portage v. Plank,* 141 Wis. 653 (124 N. W. 1000, 135 Am. St. Rep. 62, 18 Ann. Cas. 869). It was contended in *Bacon v. Van Schoonhoven,* 87 N. Y. 446, as here, that a party is not a bona fide purchaser who, upon satisfaction of a mortgage, fails to get possession of the note and mortgage. The court said:

"One who takes a conveyance or mortgage of real estate, relying upon the satisfaction of a prior mort-

gage made by a third party, has no occasion to call for the production of the mortgage which has been satisfied, or of the bond. He is neither the debtor, who should see that his own obligation is canceled when he pays the debt, nor is he the purchaser of the obligation, who should obtain possession of the securities which he purchases. He has no right to the possession of the canceled instrument, and no occasion for it, and it cannot be that he is bound to suspect a fraud, when he sees that the mortgage has been satisfied by the party who stands upon the record as its owner and entitled to satisfy it."

Also, in reference to the same contention, see *Beckmann v. Ward,* 174 Wash. 326 (24 P. (2d) 1091), wherein the court stated:

"Must one, under such circumstances, go beyond and behind the record and demand the production and cancellation of the notes secured by the mortgage, even though they are not his notes and he has no interest in them as promises to pay? Or, may he rely on the record and upon the mortgagee's guaranty to satisfy the mortgage of record, as Ward did in this case?   *   *   *

"These statutory provisions are presumed to be known by all, the appellants as well as Ward, and under them we think it is here our duty to apply the rule as to comparative innocence.

"True, Ward might have demanded that the canceled notes secured by the Higgs mortgage be exhibited to him, but for him to have done so would have been quite unusual. They were not his notes. He had no right to the possession of them and, relying upon the record, he had no reason to assume that any one would purchase the notes without taking and recording an assignment of the mortgage which secured them."

■ The modern trend of judicial thought is to protect purchasers who, in good faith, deal with property in reliance upon public records. Hence, the rule seems to be well established—although there are some authori-

ties to the contrary—that where a release or satisfaction of a mortgage has been entered by the record owner, a subsequent purchaser, for value and without notice, will be protected against the lien of a prior unrecorded assignment of the mortgages. See cases in note 104 A. L. R. 1301, 1305 and 89 A. L. R. 171, 184. See particularly the well-reasoned case of *Stetler v. Scherrer,* supra.

■ In our opinion the appellant comes within the letter and spirit of section 54-109, Oregon Code 1930, which provides:

"*Satisfaction by Owner of Record Necessary.*—No mortgage upon real estate in any county in this state shall be satisfied or released so as to free said property from the lien of said mortgage, except by the person appearing upon the records of the county where said mortgage is recorded to be the owner thereof, and a satisfaction or release of said mortgage by the party appearing upon said record to be the owner and holder of said mortgage shall operate to free the land described in such mortgage from the lien of such mortgage, so far as regards all subsequent purchasers and incumbrances for value and without notice."

The appellant Travelers Insurance Company acquired, for value and without notice of respondent's interest, all the right, title and interest of the mortgagor. The deed, however, was not accepted until the title was cleared of record encumbrances. It is hardly reasonable that appellant would release its first lien and accept a deed with three other mortgage encumbrances on the land. The transaction was consummated when the satisfactions of mortgages were executed. Appellant, in good faith and for value, purchased the land subsequent to the execution of the unrecorded assignment.

There is no case in Oregon construing the above section in reference to the question under consideration. However, having in mind the purpose and spirit of the statute, when read in connection with other recording acts, and the evils it is designed to remedy, it is believed the conclusion reached is sound and in keeping with the decisions of many courts construing statutes having a similar purpose. At least it is hoped it will afford some degree of certainty and security to those who deal in titles to real property in reliance upon public records, and to the lawyer who, after examining an abstract of title, is called upon to advise his client.

Respondent relies upon *Barringer v. Loder*, 47 Or. 223 (81 P. 778), but the factual situation is materially different from that in the instant case. In the Loder case, Hayden and his wife executed a note and mortgage in favor of Wm. Barringer. Barringer and his wife later separated and the note and mortgage were assigned by the former to his wife. Subsequently Barringer purported to assign note and mortgage to Loder. Hayden, with knowledge of the transfer to Mrs. Barringer, paid Loder the amount due on the mortgage and obtained a release or satisfaction from him. Mrs. Barringer instituted suit to foreclose her mortgage. The question involved was who had the better title to the note and mortgage, Mrs. Barringer or Loder. Hence, it was a contest between two assignees. The decision was in favor of Mrs. Barringer who, as an assignee, was prior in time to Loder. In the instant case, appellant Travelers Insurance Company is not an assignee but a purchaser, for value, and without notice of the unrecorded assignment. Loder relied upon an assignment without delivery of note and mortgage. Appellant herein relied upon the satisfaction of a mortgage by the record owner. We think the case does not support respondent herein.

Having held that appellant comes within the protection of section 54-109, Oregon Code 1930, and is a subsequent purchaser for value and without notice, it follows, by reason of the statute, that the satisfaction of the mortgage by Dunn, who was the record owner, clears the land from such encumbrance.

It follows that the decree of the lower court is reversed and the suit of plaintiff dismissed. Neither party will recover costs or disbursements.

BEAN, C. J., and ROSSMAN and KELLY, JJ., concur.