Argued and submitted January 17, reversed and remanded July 18, petition for review allowed September 27, 2012 (352 Or 454)
See later issue Oregon Reports

Rebecca NIDAY,
fka Rebecca Lewis,
*Plaintiff-Appellant,*

*v.*

GMAC MORTGAGE, LLC,
a foreign limited liability company;
Mortgage Electronic Registration Systems, Inc.,
a Delaware corporation;
and Executive Trustee Services, Inc.,
a California corporation,
*Defendants-Respondents.*

Clackamas County Circuit Court
CV10020001; A147430

284 P3d 1157

W. Jeffrey Barnes argued the cause for appellant. With him on the briefs were Elizabeth Lemoine and Luby Law Firm.

Robert J. Pratte argued the cause for respondents. With him on the brief were William G. Fig and Sussman Shank LLP.

David L. Koen and Legal Aid Services of Oregon filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

This case, one of first impression in the Oregon appellate courts, involves the intersection between Oregon's nonjudicial foreclosure laws and a creature of more modern vintage: Mortgage Electronic Registration Systems, Inc., also known as MERS. Since 1959, the Oregon Trust Deed Act has authorized the use of trust deeds as security for home loans and allowed foreclosure of a defaulting homeowner's interest by means of a privately conducted, advertised trustee's sale of the home rather than pursuant to a court-ordered, judicial foreclosure—provided, however, that certain statutory requirements are met. One of those requirements is that "any assignments of the trust deed by the trustee or the beneficiary" must be "recorded in the mortgage records in the counties in which the property described in the deed is situated." ORS 86.735(1).

MERS, meanwhile, was created by the mortgage industry in the early 1990s to make it easier to bundle and sell promissory notes and their related security interests on the secondary market. MERS is not itself a lender. Rather, lenders, loan servicers, investors, and other industry participants can become members of MERS. When a MERS member originates a home loan, MERS—as opposed to the lender—is named as the "beneficiary" of the trust deed that the home buyer provides as security for the home loan. MERS then allows members to transfer and track their beneficial interests in those promissory notes and associated trust deeds through a private, internal database rather than by publicly recording each assignment in county mortgage records.

The question before us—and one that homeowners and MERS are litigating throughout the country under similar state laws[1]—is whether MERS and its members

---

[1] A majority of states have enacted statutes permitting nonjudicial foreclosures. *See, e.g.,* Ala Code §§ 35-10-11 to 35-10-16; Alaska Stat §§ 34.20.070 - 34.20.135; Ariz Rev Stat Ann §§ 33-807 - 33-821; Ark Code Ann §§ 18-50-101 - 18-50-117; Cal Civ Code §§ 2924 - 2924k; Ga Code Ann §§ 44-14-160 - 44-14-162.4; Haw Rev Stat §§ 667-5 - 667-10; Idaho Code Ann §§ 45-1502 - 45-1515; Me Rev Stat Ann title 14 §§ 6203 - A – 6209; Mich Comp Laws §§ 600.3201 - 600.3280; Minn Stat Ann §§ 580.01 - 580.30; Miss Code Ann §§ 89-1-53 - 89-1-63; Mo Rev Stat §§ 443.290 - 443.410; Neb Rev Stat §§ 76-1001 - 76-1018; Nev Rev Stat Ann §§ 107.030 - 107.100; NH Rev Stat Ann §§ 479:22 - 479:27; NC Gen Stat §§ 45-21.1 - 45-21.33; Okla Stat Ann title 46, §§ 40-49; ORS 86.705 - 86.795; RI Gen

can avail themselves of Oregon's statutory, nonjudicial foreclosure process for trust deeds. Plaintiff is a homeowner who, like many other borrowers, executed a trust deed that named MERS as the "beneficiary." After plaintiff defaulted on her loan repayment obligation, she received a notice of trustee's sale that identified MERS as the "beneficiary" of the sale and that asserted a power of sale under the trust deed. Plaintiff then filed this declaratory judgment and injunctive relief action to stop the trustee's sale, arguing that, notwithstanding the labels used in the trust deed, MERS is not the "beneficiary" of the trust deed for purposes of Oregon's nonjudicial foreclosure laws.

The trial court granted summary judgment in favor of MERS and the other defendants (the loan servicer and the trustee), ruling that MERS was the designated "beneficiary" of the trust deed and that each statutory requirement for nonjudicial foreclosure had been met— including the requirement that any assignments of the trust deed must be recorded in the county mortgage records, ORS 86.735(1). Plaintiff now appeals, again arguing that the "Oregon legislature intended the 'beneficiary' to be the one for whose benefit the [deed of trust] is given, which is the party who lent the money," rather than MERS. We agree and hold that the "beneficiary" of a trust deed under the Oregon Trust Deed Act is the person designated in that trust deed as the person to whom the underlying loan repayment obligation is owed. The trust deed in this case designates the lender, GreenPoint Mortgage Funding, Inc., as the party to whom the secured obligation is owed. And, because there is evidence that GreenPoint assigned its beneficial interest in the trust deed but did not record that assignment, the trial court erred in granting summary judgment in favor of defendants.

## I. BACKGROUND

Because the facts giving rise to this dispute are best understood in their broader context, we begin with

Laws §§ 34-11-22, 34-27-1 - 5; SD Codified Laws §§ 21-48-1 – 15; Tenn Code Ann §§ 35-5-101 - 35-5-117; Tex Prop Code Ann §§ 51.002 - 51.005; Utah Code Ann §§ 57-1-19 - 57-1-36; Va Code Ann §§ 55-59 - 55-66.7; Wash Rev Code Ann §§ 61.24.005 - 61.24.130; W Va Code Ann §§ 38-1-1 - 38-1-15; Wyo Stat Ann §§ 34-4-101 - 34-4-113.

a brief overview of Oregon's nonjudicial foreclosure laws, recording statutes, and the nature of MERS. We then focus on plaintiff's trust deed, the facts surrounding the trustee's notice of the sale of plaintiff's home, and the trial court proceedings.

A.  *Real Estate Financing in Oregon*

For the first hundred years of statehood, real estate loans in Oregon were typically secured by mortgages. *See, e.g., Sellwood v. Gray & DeLashmutt,* 11 Or 534, 5 P 196 (1884) (describing various principles of mortgage law). By statute, Oregon law provided (and still provides) that "[a] mortgage of real property is not a conveyance so as to enable the owner of the mortgage to recover possession of the property without a foreclosure and sale." ORS 86.010. Rather, a mortgage creates a lien on the property that can be foreclosed, like other liens, only by way of judicial action, after a lawsuit has been filed. *See* ORS 88.010. And, as is the case with other liens, the judicial foreclosure process includes a statutory right to redemption. That is, once a court issues a decree of foreclosure in favor of the mortgagee, thereby ordering the mortgaged property to be sold, the mortgagor nonetheless retains the right to satisfy the debt and redeem the property for a period of time after the sale. ORS 88.080; ORS 88.100; ORS 23.410 - 23.600 (1957).

By the late 1950s, there was a movement afoot to streamline certain features of Oregon's mortgage laws— particularly, judicial involvement and the statutory right to redemption by borrowers and junior lienholders. *See* Minutes, Senate Judiciary Committee, SB 172, Feb 19, 1957. In 1959, the legislature responded by enacting what is known as the Oregon Trust Deed Act (OTDA), ORS 86.705 to 86.795, as an alternative to the judicial foreclosure process.[2] The OTDA authorizes the use of "[t]ransfers in trust of an interest in real property"—*i.e.,* transfers by trust deeds, "to secure the performance of an obligation of a grantor, or any other person named in the deed, to a beneficiary." ORS 86.710; *see also* ORS 86.705(5) (defining a "trust deed" as a

---

[2] For purposes of the issues raised in this case, there were no material changes to the OTDA between the time plaintiff executed the trust deed in 2006 and filed this action in early 2010. Unless otherwise noted, statutory references in this opinion are to the 2009 versions.

deed executed in conformity with the OTDA that conveys "an interest in real property to a trustee in trust to secure the performance of an obligation owed by the grantor or other person named in the deed to a beneficiary").[3]

Under the OTDA, a trust deed is "deemed to be a mortgage on real property" and is generally "subject to all laws relating to mortgages on real property"—except where particular differences are spelled out in the OTDA. ORS 86.715. The most significant difference, of course, is that the trustee may "foreclose a trust deed by advertisement or sale" without judicial involvement.[4] Under ORS 86.735, four requirements must be satisfied in order for the trustee to initiate a nonjudicial foreclosure:

"(1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated; and

"(2) There is a default by the grantor or other person owing an obligation, the performance of which is secured by the trust deed, or by their successors in interest with respect to any provision in the deed which authorizes sale in the event of default of such provision; and

"(3) The trustee or beneficiary has filed for record in the county clerk's office in each county where the trust property, or some part of it, is situated, a notice of default containing the information required by ORS 86.745 and containing the trustee's or beneficiary's election to sell the property to satisfy the obligation; and

"(4) No action has been instituted to recover the debt or any part of it then remaining secured by the trust deed, or, if such action has been instituted, the action has been dismissed, [with limited exceptions]."

---

[3] Although deeds of trust predated the OTDA, Oregon law had long treated deeds of trust, when used as security for a real estate purchase, as if they were mortgages. *See* Lord's Oregon Laws, title XLVII, ch III, § 7237 (1910) ("A trust deed in the nature of a mortgage shall be deemed to be a mortgage, and be subject to the same rules as a mortgage.").

[4] The nonjudicial foreclosure process is elective. The beneficiary of the trust deed also has the option of foreclosing "as provided by law for the foreclosure of mortgages on real property," ORS 86.710, or suing on the promissory note, *see Beckhuson v. Frank*, 97 Or App 347, 351, 775 P2d 923, *rev den*, 308 Or 465 (1989).

If each of those requirements is met, the trustee can then provide the grantor and others with notice of the intended sale; that notice likewise must meet various statutory criteria. *E.g.*, ORS 86.737 (describing the form of the notice); ORS 86.740 (listing persons to whom notice of sale must be given); ORS 86.745 (contents of the notice); ORS 86.750 (service and publication requirements of notice of sale). If the trustee provides the required notice of the sale to the proper parties, and otherwise conducts the sale according to the statutory requirements, the trust deed grantor—unlike a traditional mortgagor—has no statutory right to redeem the property after the trustee's sale. *See* ORS 86.770 (describing effect of a trustee's sale).

B. *Oregon's Recording Laws*

Operating in the background of the OTDA are Oregon's recording laws. *See, e.g.*, ORS 86.735(1) (requiring trust deeds, assignments of trust deeds, and appointments of successor trustees to be recorded in appropriate county mortgage records). Like every other state, Oregon has enacted recording statutes that govern priorities with respect to interests in real property. Those statutes generally serve two related purposes: They protect *bona fide* purchasers who acquire interests in real property for consideration and without notice of prior interests. *E.g.*, ORS 93.640 ("Every conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof affecting the title of real property within this state [including mortgages and trust deeds] which is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration of the same real property * * *."). Conversely, they allow *prospective* purchasers to consult the public records and discover prior claims that might affect their interests, and they protect recorders by putting prospective purchasers on notice of those prior claims. ORS 93.710(1).

Oregon's recording laws require the county clerk to keep a separate book and index for recorded mortgages.

ORS 93.610; ORS 93.630. And, as later discussed in more detail, there are also specific recording requirements for discharging a mortgage. *See, e.g.*, ORS 86.100 - 86.140. If the mortgage is discharged in accordance with those recording requirements, "the land described in the mortgage [is free] from the lien of the mortgage as against all subsequent purchasers and incumbrances for value and without notice." ORS 86.120.

Since at least the late 1800s, Oregon law has also expressly permitted the recording of *assignments* of mortgages. *See* ORS 86.060 ("Mortgages may be assigned by an instrument in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property, and recorded in the records of mortgages of the county where the land is situated."); ORS 205.130(2)(a) (county clerk shall record all "[d]eeds and mortgages of real property, powers of attorney and contracts affecting the title to real property, authorized by law to be recorded, assignments thereof and of any interest therein when properly acknowledged or proved and other interests affecting the title to real property required or permitted by law to be recorded"); *see generally Barringer v. Loder*, 47 Or 223, 81 P 778 (1905) (explaining history of statutes regarding recording of mortgage assignments).[5] Recording an assignment of a mortgage is not (and never has been) necessary under Oregon law to transfer a beneficial interest in the security instrument. Rather, by recording the assignment, the assignee gains a measure of protection against subsequent purchasers who are not otherwise aware of the assignment. *See Willamette Col. & Credit Serv. v. Gray*, 157 Or 77, 83, 70 P2d 39 (1937) ("It may be conceded that respondent was not obliged to take a written assignment and record it in order to acquire title as between the immediate parties, *but we think it was required to do so in*

---

[5] Until 1965, Oregon law stated that "[e]very assignment of mortgage shall be recorded at full length, and a reference shall be made to the book and page containing such assignment upon the margin of record of the mortgage." *Former* ORS 86.070 (1959), *repealed by* Or Laws 1965, ch 252, § 1. The legislature repealed that provision to reduce the cost of recording for counties that had begun using microfilm but were required to print copies in order to make margin notations. Minutes, Senate Committee on Local Government, HB 1400, Apr 9, 1965.

*order to maintain its lien as against an innocent purchaser."* (Emphasis added.)).[6] The recorded assignment also protects the assignee in the event that the original mortgagor and mortgagee enter into a purported discharge of the mortgage after the assignment. *See* ORS 86.110; ORS 86.120.

Those recording laws for mortgages were in place in 1959 when the legislature enacted the OTDA and, as later discussed in more detail, generally apply equally to the recording of trust deeds. ORS 86.715. For now, suffice it to say that the trustee may foreclose a trust deed under the OTDA if certain public recording requirements are satisfied—namely, that "[t]he trust deed, any assignments of the trust deed by the trustee or the beneficiary * * * are recorded in the mortgage records in the counties in which the property described in the deed is situated." ORS 86.735(1).

## C. *MERS*

In the first few decades after the OTDA was enacted, real estate loans in Oregon fit neatly into its scheme: A lender originated a home loan; as security for the loan, a borrower executed a trust deed that named the lender as the beneficiary; and assignments of the trust deed from the lender- beneficiary, if any, were recorded in the mortgage records of the county in which the home was located. That changed, however, with the growth of the market for mortgage-backed securities and the consequent development of MERS.[7]

By the early 1990s, lenders were commonly bundling beneficial interests in individual loan obligations and selling

---

[6] Other sources of law, such as Uniform Commercial Codes Articles 3 and 9, also govern priority with regard to certain assignments of security interests in real property. *See* ORS 79.0109; UCC § 9-109, Official Comment 7 ("[I]f M sells the promissory note to X or gives a security interest in the note to secure M's own obligation to X, this Article applies to the security interest thereby created in favor of X. The security interest in the promissory note is covered by this Article even though the note is secured by a real-property mortgage.").

[7] For purposes of providing background on MERS, we have not confined ourselves to the record in this case, drawing instead on law review articles, case law, and other sources that describe the role of MERS in real estate financing. The parties, although disagreeing about the merits of MERS, do not disagree fundamentally about what MERS is and does.

them in a secondary market as mortgage-backed securities. Depending on how the loans were originated and sold, and depending on the applicable state laws where the loans were made, it was sometimes necessary for assignments of mortgage interests to be recorded under state recording acts. *See* Phyllis K. Slesinger & Daniel McLaughlin, *Mortgage Electronic Registration System*, 31 Idaho L Rev 805, 808 (1995) ("[T]he difficulty involved in national investors' staying abreast of state law has resulted in secondary market investors generally requiring recorded assignments for most transfers of prior ownership interests and servicing rights. Warehouse lenders require delivery of a note and an executed but unrecorded assignment of mortgage to perfect their security interest in mortgages."). The public recording of numerous bundled mortgage and trust deed assignments was both cumbersome and expensive for buyers and sellers of mortgage-backed securities. *Id.*

In 1993, various mortgage industry participants proposed the MERS system as an expedient alternative to recording multiple transfers of beneficial interests in loan obligations in the county records. Under that system, companies that participate in the mortgage industry, such as lenders and servicing institutions, can become members of MERS and pay a fee to use the MERS system, a private electronic database that tracks the transfer of beneficial interests in loan obligations.

When a MERS member originates a home loan, the loan is assigned an 18-digit "Mortgage Identification Number" in the MERS database. If, as is often the case, the loan obligation is secured by a trust deed, MERS is designated in that trust deed as the "nominee" for the member and for the member's successors and assigns. MERS is also named as the "beneficiary" of the trust deed. If the MERS member sells or assigns the beneficial interest in the loan obligation to another member, that transfer is tracked in the MERS database (by the loan's Mortgage Identification Number). The transfer is not recorded in the county records, and MERS continues to act as "beneficiary" of the trust deed.

D. *Plaintiff's Trust Deed, Default, and Trustee's Notice of Sale*

In August 2006, plaintiff entered into a home loan agreement with GreenPoint, a MERS member. In exchange for the loan, plaintiff signed a promissory note in which she promised to pay $236,000, plus interest, to GreenPoint. Plaintiff also executed a "Deed of Trust," which was subsequently recorded in Clackamas County. The trust deed states that "Mortgage Electronic Registration Systems, Inc. (MERS) is the Grantee of this Security Instrument," and it includes various "definitions":

"(C) 'Lender' is GreenPoint Mortgage Funding, Inc. * * *

"(D) 'Trustee' is FIRST AMERICAN TITLE INSURANCE COMP

"(E) 'MERS' is Mortgage Electronic Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. *MERS is the beneficiary under this Security Instrument.* * * *

"(F) 'Note' means the promissory note signed by Borrower and dated August 15, 2006. The Note states that borrower owes Lender [$236,000] plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than September 1, 2036."

(Uppercase in original; emphasis added.) The trust deed also provides:

"TRANSFER OF RIGHTS IN THE PROPERTY

"*The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.* This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the [Clackamas County].

"* * * * *

"TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the 'Property.' *Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument.*"

(Uppercase in original; emphasis added.)

On April 17, 2009, MERS recorded a document appointing a successor trustee, LSI Title Company of Oregon, LLC. Sometime after that date, plaintiff received a "Trustee's Notice of Sale" from Defendant Executive Trustee Services, Inc., agent for LSI Title Company. That notice of sale identified "'MERS' MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR LENDER GREENPOINT MORTGAGE FUNDING, INC., as Beneficiary[.]'" (Uppercase in original.) It further stated that plaintiff was in default and that "[b]oth the beneficiary and trustee have elected to sell the said real property to satisfy the obligations secured by said trust deed and notice has been recorded pursuant to [ORS] 86.735(3) * * *." The sale was scheduled for September 2, 2009.

Plaintiff, upon receiving the notice of trustee's sale, sent a letter, by way of her attorney, to Executive Trustee Services. In the letter, plaintiff demanded that the sale be canceled and requested that Executive Trustee Services provide various documents, including documents establishing the "entire chain of title to the Deed of Trust and note." Plaintiff contends that she never heard back from Executive Trustee Services in response to that letter or her follow-up letter, but the trustee's sale was apparently canceled and rescheduled for February 1, 2010.

## E.  *Declaratory and Injunctive Relief Proceedings*

On February 1, the supposed date of the trustee's sale, plaintiff filed this action for declaratory relief and injunctive relief against Executive Trustee Services, MERS, and GMAC Mortgage, LLC (GMACM), the company that was servicing the loan. Plaintiff alleged that defendants were "attempting to conduct a Trustee's Sale of the Plaintiff's residential real property by rescheduling a Trustee's Sale without notice to the Plaintiff and where the Defendants have not only failed to provide any evidence that they have any legal interest in either the Note or the Deed of Trust but have also specifically ignored and refused Plaintiff's multiple prior requests for specific information * * * including but not limited to the history of the chain of title to the Note and Deed of Trust."

Defendants moved for summary judgment on plaintiff's claims, arguing that plaintiff was in default on the note and that GMACM—the "holder of the Note"— and MERS—the "beneficiary of the Deed of Trust"—were entitled, as a matter of law, to foreclose the trust deed. Specifically, defendants explained:

> "It is indisputable that plaintiff was in default of her loan. As such, it cannot be contested that the holder of the Note and the beneficiary of the Deed of Trust were entitled to foreclose the Deed of Trust. Defendants have put forth conclusive evidence that GMACM, as the holder of the original note and servicer of plaintiff's loan, properly initiated the foreclosure of the Deed of Trust on behalf of MERS, the beneficiary of the Deed of Trust, as the nominee of the original lender's assignee, Aurora Bank. LSI, the duly appointed successor trustee, properly executed the non-judicial foreclosure."

(Footnote omitted.) Defendants represented in their summary judgment motion that "GMACM's counsel has the original note and will bring the same to the hearing on this motion."

In response, plaintiff argued, among other contentions, that MERS "is *not* the 'beneficiary' of anything despite boilerplate language in Deeds of Trust." (Emphasis and underscoring in original.) The beneficiary under the OTDA, plaintiff explained, is the person who benefits from

the trust deed—*i.e.*, "the one that lends the money." (Internal quotation marks and citation omitted.) The identity of the "beneficiary" matters, plaintiff contended, because nonjudicial foreclosure is only available if "any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated." ORS 86.735(1). "[W]hat that's telling us in that statute," plaintiff's counsel argued, "is that if there are any assignments which are necessary because the original lender is not the one that's seeking to foreclose, that assignment would have to be recorded, as I'm reading this."

As the parties' arguments unfolded at the hearing, much of the dispute hinged on whether subsection (1) of that statute had been satisfied: *i.e.*, whether there had been an unrecorded assignment by the "beneficiary."[8] Defendants argued that, because MERS was the original and current named beneficiary, "[w]e say it was not assigned, Your Honor, but that's where * * * the rubber's going to meet the road." Plaintiff, on the other hand, continued to maintain that MERS was not the true "beneficiary" and that the original lender, who was not part of the foreclosure process, never recorded a subsequent assignment of its beneficial interest:

> "The language in that statute that says, 'And any assignments,' is put there for a reason, and I would proffer to the Court that the reason is, if you've got a stranger to the transaction, a third party who is not the original lender, who is trying to foreclose, you have to show that you, the third party, have the right to do so by a valid recorded assignment, and they don't have one."

Ultimately, the trial court was not persuaded that the statutory text or other sources of Oregon law precluded MERS from acting as "beneficiary" of a trust deed under the OTDA. Consequently, there was no genuine issue of fact regarding "any assignments" of the trust deed being recorded; MERS had never assigned its beneficial interest in the trust deed. Seeing "nothing that indicates that there has been a failure to comply with ORS 86.735," the court

---

[8] The parties agreed that subsections (2), (3), and (4) were not at issue.

granted defendants' motion and entered judgment against plaintiff.

## II. ANALYSIS

Plaintiff now appeals that judgment, reprising her argument that MERS is not actually the "beneficiary" of the trust deed under the OTDA.[9] Just as she did in the trial court, plaintiff focuses on decisions throughout the country (including a slew of recent Oregon federal district court decisions) in which courts have looked beyond the recitals in the trust deed to determine the proper "beneficiary" of that security instrument. *See, e.g., James v. ReconTrust Co.,* 345 F Supp 2d 1145, 2012 US Dist LEXIS 26072 (D Or Feb 29, 2012). She urges us to conclude, as some of those courts have, that the statutory "beneficiary" of the trust deed is the original lender, not MERS.

Defendants, for their part, submit that plaintiff contractually agreed that MERS would be the beneficiary of the trust deed, and that nothing in the text of the OTDA prevents a nominee or agent from serving as the "beneficiary" in this particular context. Like plaintiff, defendants marshal various federal cases—including Oregon district court decisions—that support their view of the statutory scheme. *E.g., Beyer v. Bank of America,* 800 F Supp 2d 1157 (D Or 2011).[10]

We turn, then, to the primary issue before us: the meaning of the term "beneficiary" in ORS 86.735(1), which

---

[9] In her first assignment of error, plaintiff argues that defendants lack "standing" to foreclose. We reject that argument without discussion. In her third assignment, she contends that the trial court erred in "refusing to follow Oregon Federal and Bankruptcy Court decisions construing the Oregon Trust Deed Act * * *." If that were a proper assignment of error—which it is not, *see Marc Nelson Oil Products, Inc. v. Grim Logging Co.,* 199 Or App 73, 75 n 1, 110 P3d 120, *adh'd to as modified on recons,* 200 Or App 239, 115 P3d 935 (2005) ("Assignments of error * * * are to be directed against rulings by the trial court, not against components of the trial court's reasoning or analysis that underlie that ruling.")—we would reject it based on the elementary principle that federal courts do not bind state courts on matters of state law.

[10] The parties have supplied us with numerous decisions involving MERS, which we have reviewed. We further note, however, that plaintiff, in particular, has supplied this court with various supplemental "authorities," consisting, in many cases, of pleadings from state and federal courts. We fail to see how the allegations of parties in other cases—other jurisdictions, in fact—are legal authority of any kind. We have not relied at all on those supplemental filings.

we discern from the text, context, and helpful legislative history of the statute.[11] *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). For purposes of the OTDA, "beneficiary" is a defined term; ORS 86.705 provides:

> "As used in ORS 86.705 to 86.795, unless the context requires otherwise:
>
> "(1) 'Beneficiary' means *the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given,* or the person's successor in interest, and who shall not be the trustee unless the beneficiary is qualified to be a trustee under ORS 86.790(1)(d)."

(Emphasis added.)

As noted above, the trust deed in this case stated, "MERS is the beneficiary under this Security Instrument." According to defendants, that is the end of the debate. MERS, under the plain language of the trust deed, is the person named and designated in the trust deed as the beneficiary, and nothing in the OTDA expressly prohibits the parties from contractually agreeing to designate MERS in that way. In other words, absent some express prohibition on this type of arrangement, the person "for whose benefit a trust deed is given" is whoever the trust deed says it is.[12]

---

[11] Defendants contend that the sole issue on appeal is the meaning of ORS 86.705(1), the definition of beneficiary, and that the "contention that [defendants] did not comply with ORS 86.735(1) is *not* at issue here." (Emphasis by defendants.) We appreciate that plaintiff's brief is not a model of clarity regarding how the statutory scheme fits together, and her focus certainly is on the definition of "beneficiary" under ORS 86.705(1). However, as the quoted portions of the summary judgment hearing demonstrate, 251 Or App at 291, the parties and the trial court understood the definition of "beneficiary" in ORS 86.705(1) to be important insofar as it drives the conclusion that there are no unrecorded assignments by the beneficiary for purposes of ORS 86.735(1). The trial court expressly ruled that the requirements of ORS 86.735 for nonjudicial foreclosure were satisfied, and it is that summary judgment that plaintiff has appealed.

[12] Defendants also suggest that, because plaintiff agreed that MERS would act as the "beneficiary" of the trust deed, she "must prove there is a clear and 'overpowering' Oregon rule of law that the Deed of Trust violates before this Court may interfere with the parties freedom of contract." However, this case is not about the parties' freedom of contract or their intent; it is about *legislative* intent. That is, the OTDA authorizes nonjudicial foreclosure only when certain *statutory* requirements are met, regardless of what the parties might have believed when they executed the trust deed. Thus, the fact that plaintiff "contractually agreed that MERS was the beneficiary in its capacity as agent (nominee) for the lender,

We are not persuaded that the legislature intended circularity and redundancy in defining beneficiary. The legislature could have simply defined "beneficiary" as the person named or otherwise designated in a trust deed *as the beneficiary*. Instead, the legislature used the phrase "the person for whose benefit a trust deed is given[.]" We presume that the legislature used that different language for a reason. *State v. Cloutier*, 351 Or 68, 98, 261 P3d 1234 (2011) (although redundancy may sometimes be what the legislature intended, such an interpretation "should give us pause"; courts generally strive to "give effect to all" of the parts of a statute (citing ORS 174.010)). That is, we presume that the legislature intended the phrase "person for whose benefit a trust deed is given" to add some content to the definition of beneficiary.

Considering the statutory and historical context of the OTDA, we are persuaded, further, that the legislature understood the "person for whose benefit a trust deed is given" to refer to a particular person—namely, the person to whom the underlying, secured obligation is owed. As previously discussed, the OTDA was enacted with the express understanding that trust deeds would function as a species of mortgage. ORS 86.715 ("A trust deed is deemed a mortgage ***."). The "benefit" of the trust deed, like a mortgage, is security for an underlying obligation. Indeed, that understanding of the "benefit" of the trust deed— security of an obligation owed to the beneficiary—permeates the statutory scheme. It is present in the definition of "trust deed": "a deed executed in conformity with ORS 86.705 to 86.795, and conveying an interest in real property to a trustee in trust *to secure the performance of an obligation owed by the grantor or other person named in the deed to a beneficiary*," ORS 86.705(5) (emphasis and underscoring added); in the definition of "grantor": "the person conveying an interest in real property by a trust deed *as security for the performance of an obligation*," ORS 86.705(2) (emphasis added); in the statute authorizing trust deeds: "Transfers in

---

its successors and assigns" does not determine whether MERS is the beneficiary *for purposes of the OTDA*.

We further note that defendants do not argue, at least at the summary judgment stage, that plaintiff is somehow estopped from insisting upon compliance with the OTDA, and we expressly do not address that issue.

trust of an interest in real property may be made *to secure the performance of an obligation of a grantor, or any other person named in the deed, <u>to a beneficiary</u>,*" ORS 86.710 (emphasis and underscoring added); and in the statute deeming trust deeds to be mortgages: "the beneficiary is deemed the mortgagee," ORS 86.715.

Nothing in the text, context, or legislative history of the OTDA suggests that the legislature intended the "person for whose benefit a trust deed is given" to refer to anyone other than the party to whom the secured obligation was originally owed. ORS 86.705(1). And, as a matter of historical context, defendants' construction of the statute is not consistent with how security instruments in the nature of mortgages functioned. By the time the OTDA was enacted in 1959, it was well established that the mortgage was merely an incident to the underlying debt. *See Beauchamp v. Jordan*, 176 Or 320, 327, 157 P2d 504 (1945) ("They were merely an incident to the debts evidenced by the above-mentioned notes and *the transfer of the notes effected a transfer of these mortgages.*" (Citations omitted; emphasis added.)); *Rutherford v. Eyre & Co.*, 174 Or 162, 172, 148 P2d 530 (1944) ("[S]ome point is sought to be made by the plaintiffs of the fact that the collateral agreements were not formally assigned to Eyre and Co. But this, of course, was not essential; the mortgages were but incidents to the notes, and endorsement and delivery of the notes carried the mortgages with them * * * and necessarily, also, the collateral agreements, as an integral part of those instruments."); *Schleef v. Purdy et al.*, 107 Or 71, 78, 214 P 137 (1923) ("Until foreclosure and sale the mortgage is a mere chose in action secured by a lien upon the land, which gives to the mortgagor no title or estate whatever to the mortgaged premises. The mortgagor has no interest in the mortgaged premises which he can sell or which can be sold separately from the debt itself, and the transfer of the mortgage, without a transfer of the debt intended to be secured thereby, is a mere nullity. * * * A mortgage given as security for the payment of a note may be transferred *either by the indorsement of the note and the surrender of its possession or, if the note is payable to bearer, by the mere delivery thereof and the surrender of its possession, and*

*this transfer of the note, without any formal transfer of the mortgage, transfers the mortgage*[.]" (Emphasis added.)). In other words, the underlying debt and the security for that debt were not separately transferrable; the party who benefitted from the mortgage and the party to whom the obligation was owed were one and the same.

Defendants, although acknowledging that mortgages were historically considered an "incident to the debt," argue that the legislature nonetheless would have intended to allow nominees or agents to hold "legal title" on behalf of the party to whom the underlying obligation is owed— in other words, to allow someone other than the beneficial owner of the trust deed to serve as the beneficiary. For textual support, defendants point to the language that precedes the definitions in ORS 86.705 and states those definitions apply "[a]s used in ORS 86.705 to 86.795, *unless the context requires otherwise*[.]" (Emphasis added.) That emphasized language, defendants argue, opens the door to a "modified definition" of beneficiary because the "Oregon Legislature expressly contemplated that agents may be used in real estate transactions." As additional context, defendants point to ORS 86.720(3), which states that, before issuance and recording of a release of the trust deed, "the title insurance company or insurance producer shall give notice of the intention to record a release of trust deed *to the beneficiary of record and, if different, the party to whom the full satisfaction payment was made.*" (Emphasis added.) According to defendants, that statute is an "expressed recognition that the beneficiary and the note owner are not always the same party. So contrary to [plaintiff's] reading of ORS 86.705(1), the Oregon Legislature has not restricted parties from appointing an agent to serve as beneficiary of record."

Defendants have conflated two issues: (1) who is the "beneficiary" under ORS 86.705(1); and (2) who can act *on behalf of* that beneficiary. The former is the statutory construction question before us, and, in our view, neither agency nor nominee law provides relevant context as to that question, let alone context that demands a modified statutory definition. Moreover, defendant's suggestion that a nominee or agent might hold "legal title" as the "beneficiary" of a trust deed finds no support in the OTDA or Oregon case

law. It is true that "Oregon has recognized since 1862 that one person may hold legal title to property and that another person may hold equitable title to that property." *Klamath Irrigation Dist. v. United States*, 348 Or 15, 43, 227 P3d 1145 (2010). But, if anything, that body of law suggests that the holder of legal title under OTDA would be the *trustee*, not a separate "nominee" or "agent" acting on behalf of the beneficiary.[13] *E.g.*, *Newman v. Randall*, 90 Or App 629, 633, 753 P2d 435, *rev den*, 306 Or 155 (1988) ("A person holding legal title to land who sells it by land sale contract thereby vests the equitable title in the vendee. The vendor retains the legal title as security and *as a trustee* for the vendee." (Citations omitted; emphasis added.)).[14]

Defendants' reliance on ORS 86.720(3) is also misplaced. That statute, which involves the release of a trust deed, recognizes that the "beneficiary *of record*" might be different from the party to whom the full satisfaction payment is made. ORS 86.720(3) (emphasis added). The language defendants omit makes all the difference. By distinguishing between the "beneficiary"

[13] Even that proposition is dubious, considering that trust deeds operate like mortgages rather than conveying legal or equitable title. In *Kerr v. Miller*, 159 Or App 613, 621, 977 P2d 438, *rev den*, 329 Or 287 (1999), we explained:

"*A trust deed securing the sale of property is deemed a mortgage.* ORS 86.715. With respect to mortgages, Oregon is a 'lien theory' state, *meaning that a mortgage on real estate does not convey legal or equitable title or interest to the holder of the mortgage (mortgagee).* Instead, the mortgagee has only a lien on the property. ORS 86.010; *Land Associates v. Becker*, 294 Or 308, 312, 656 P2d 927 (1982). As a result, if the debtor (the mortgagor) defaults on the obligations secured by the mortgage (*e.g.*, payments on the debt or insuring and maintaining the property), the mortgagee does not gain an immediate right of possession but must instead first foreclose the secured interest. *See* ORS 86.010. Until foreclosure, the mortgagee lawfully may take possession only if the mortgagor voluntarily relinquishes possession."

(Emphasis added.)

[14] Defendants also argue that "[t]he *Restatement (Third) of Property (Mortgages)* confirms that an agent may be used to enforce a deed of trust on behalf of a note owner, even instructing courts to 'be vigorous in seeking to find such [an agency] relationship, since the result is otherwise likely to be a windfall for the mortgagor and the frustration of [the note owner's] expectation of security.'" (quoting *Restatement (Third) of Property (Mortgages)* § 5.4, comment e (1997)). This case is not about whether, as a policy matter, an agent should be allowed to enforce a deed of trust. It is about whether the statutory requirements for nonjudicial foreclosure have been satisfied. The policy concerns discussed in that *Restatement*, which was published long after the OTDA was enacted, do not inform our analysis of the pertinent statutory language. And, in any event, those policy concerns are matters for the Oregon legislature, not the courts.

and the "beneficiary of record," the OTDA recognizes that the beneficiary of a trust deed might not be reflected in the public records, because the note has been transferred by indorsement without a recorded assignment. *Cf.* ORS 86.110 (concerning discharge of mortgage "[w]henever a promissory note secured by mortgage on real property is transferred by indorsement without a formal assignment of the mortgage"); *Barringer*, 47 Or at 229 (describing statutes expressly recognizing the "manner of assignment" of a mortgage by indorsement of the underlying promissory note). So, not only does the statutory distinction between "the beneficiary of record" and "party to whom the full satisfaction payment was made" fail to support defendants' contention that the trust deed and underlying obligation can be severed and held by separate parties; it actually cuts against defendants' position, suggesting instead that the beneficial interest passes *with the note* but might not be reflected in the county mortgage records.

In sum, we are persuaded that the "benefit" of the trust deed is security for the underlying obligation, and that "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given" refers to the person named or designated in the trust deed as the party to whom the underlying, secured obligation is owed. We turn, then, to the trust deed at issue.

As described above, the trust deed states that GreenPoint Mortgage Funding, Inc., is the "lender." It further states that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." In a later section, the trust deed explains that the beneficiary of the trust deed is "MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS."

Despite referring to MERS as the beneficiary, the trust deed designates GreenPoint as the party to whom plaintiff, the borrower, owes the obligation secured by the trust deed. The trust deed explicitly "secures to Lender: (i) the repayment of the Loan * * * and (ii) the performance of Borrower's covenants and agreements * * *." For the reasons discussed above, GreenPoint, the lender, is therefore the

"beneficiary" of the trust deed within the meaning of ORS 86.705(1), whereas MERS is designated as an agent or nominee of GreenPoint.

Consequently, we conclude that the trial court erred in granting summary judgment in favor of defendants in this case. The trial court, with MERS in mind as the "beneficiary," examined the requirements of ORS 86.735, including the requirement in subsection (1) that "any assignments of the trust deed by the trustee or the beneficiary * * * are recorded in the mortgage records * * *." There was no genuine issue of material fact regarding the requirement in ORS 86.735(1), the court concluded, because MERS had never assigned the trust deed. The same cannot be said with respect to GreenPoint as beneficiary.

There is evidence in the summary judgment record that GreenPoint transferred its interest in the promissory note, the obligation secured by the trust deed. Transfer of the promissory note was one of the ways that a mortgage was "assigned" when the OTDA was enacted; the other was by a separate written document. 251 Or App at 285-86, 295-96; *Barringer*, 47 Or at 229-30. We have no reason to believe that the legislature intended Oregon law regarding the "assignment" of trust deeds to be any different from mortgages. Trust deeds are "deemed to be a mortgage" unless inconsistent with the OTDA, and nothing in the OTDA prescribes any other method of assignment. Thus, like a mortgage, a trust deed may be assigned (1) by a separate writing or (2) by the assignment of the underlying promissory note.

The OTDA, as previously discussed, requires that "*any* assignments" be "recorded in the mortgage records" before a trustee may proceed with nonjudicial foreclosure. ORS 86.735(1) (emphasis added). According to defendants, though, "assignment" refers only to formal, written assignments rather than assignment by transfer of the note. In support of that reading of the statute, defendants argue, first, that a written assignment "is capable of recording" but "a transfer of a note is not." Second, defendants argue that, if "assignment" were to include the transfer of an interest by operation of law, it would create a conflict with ORS 86.110.

Neither argument is persuasive. First, the text of the OTDA, which refers broadly to *"any* assignment," does not suggest any distinction between those assignments that are readily recordable and those that are not. But, in any event—and contrary to defendants' assertion—an assignment by "transfer of a note" is, in fact, capable of being recorded. Nothing prevents parties from recording a copy of the indorsed note or a separate writing memorializing that transfer.

Second, ORS 86.110(1), as it read when the OTDA was enacted and as it still reads today, refers to the discharge of a mortgage that has been transferred by indorsement "without a *formal* assignment" of the mortgage. ORS 86.110(1) (emphasis added). That statutory language is consistent with the understanding, well established at the time the OTDA was enacted, that there were two methods of assignment, one "formal" and the other by indorsement. As noted above, the text of the OTDA—*"any* assignments"—is broad enough to encompass both. Moreover, we do not perceive a conflict between, on the one hand, a requirement that "any assignment" be recorded before proceeding with nonjudicial foreclosure, and, on the other hand, a statutory procedure that governs proof of satisfaction where a mortgage is transferred without a "formal assignment." The statutes address different subjects and use different language.

In this summary judgment record, there is evidence that GreenPoint assigned its interest in the promissory note and no longer has any beneficial interest in the trust deed; however, there is no evidence that the county mortgage records actually reflect an assignment by GreenPoint. Thus, the trial court erred in granting defendants' summary judgment motion, because there are genuine issues of material fact as to whether one of the requirements for nonjudicial foreclosure, ORS 86.735(1), has been satisfied.[15]

In sum, we conclude that the "beneficiary" of a trust deed for purposes of the OTDA is the person named

[15] Defendants argue that plaintiff "never raised the issue of any unrecorded assignments before the trial court" and "[i]n fact, she conceded there were none." Although plaintiff's arguments vacillated, she did raise the issue of unrecorded assignments to the trial court, contending that a third party attempting to foreclose must have "a valid recorded assignment, and [defendants] don't have one."

or otherwise designated in the trust deed as the person to whom the secured obligation is owed—in this case, the original lender. We further conclude that, because there is evidence that the beneficiary assigned its interest in the trust deed without recording that assignment, there is a genuine issue of material fact on this summary judgment record as to whether ORS 86.735(1), a predicate to nonjudicial foreclosure, has been satisfied. We emphasize, however, that our holding concerns only the requirements for *nonjudicial* foreclosure. *Cf.* ORS 86.710 (beneficiary of the trust deed retains the option of judicial foreclosure). And the import of our holding is this: A beneficiary that uses MERS to avoid publicly recording assignments of a trust deed cannot avail itself of a nonjudicial foreclosure process that requires that very thing—publicly recorded assignments.

Reversed and remanded.