648 June 6, 2013 No. 26

IN THE SUPREME COURT OF THE
STATE OF OREGON

Rebecca NIDAY,
fka Rebecca Lewis,
*Respondent on Review*,

*v.*

GMAC MORTGAGE, LLC,
a foreign limited liability company;
and Executive Trustee Services, Inc.,
a California corporation,
*Defendants-Respondents*,

*and*

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
a Delaware corporation,
*Petitioner on Review*.

(CC CV10020001; CA A147430; SC S060655)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 8, 2013.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, argued the cause for petitioner on review Mortgage Electronic Registration Systems, Inc. With him on the brief were Frederick B. Burnside and Kevin H. Kono.

W. Jeffrey Barnes, *pro hac vice,* W. J. Barnes, PA, Beverly Hills, argued the cause for respondent on review. With him on the brief was Elizabeth Lemoine, Makler Lemoine & Goldberg, PC, Portland.

Hope A. Del Carlo, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Rolf C. Moan, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon.

---

* Appeal from Clackamas County Circuit Court, Henry C. Breithaupt, Judge. 251 Or App 278, 284 P3d 1157 (2012).

BREWER, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to that court for further proceedings.

Kistler, J., concurred in part and specially concurred in part and wrote an opinion in which Balmer, C. J., joined.

**BREWER, J.**

This is the second of two cases this court decides today that is concerned with the nonjudicial foreclosure of trust deeds under the Oregon Trust Deed Act (OTDA) and the mortgage finance industry's practice of naming the Mortgage Electronic Recording System, Inc., (MERS), rather than the lender, as a trust deed's "beneficiary." In *Brandrup v. ReconTrust Co.*, 353 Or 668, ___ P3d ___ (2013), we answered questions certified to us by a United States District Court about whether and how that practice comports with the OTDA's nonjudicial foreclosure requirements. In the present case, we apply our answers in *Brandrup* to a dispute that comes to this court through a petition for review of a decision of the Court of Appeals.

The underlying case is an action for declaratory and injunctive relief, brought by a home loan borrower against MERS and other entities that were attempting to utilize the OTDA's "advertisement and sale" procedure, ORS 86.710, to foreclose the trust deed that secured her promise to repay. Plaintiff argued that, although the trust deed identified MERS as the beneficiary of the trust deed, neither MERS nor any of the other entities involved in the foreclosure had any legal or beneficial interest in the trust deed that would allow them to proceed under the OTDA. The trial court granted summary judgment to defendants, but the Court of Appeals reversed that decision, holding that a genuine issue of material fact existed as to whether all of the requirements for nonjudicial foreclosure set out in the OTDA had been satisfied. *Niday v. GMAC Mortgage, LLC*, 251 Or App 278, 300, 284 P3d 1157 (2012). We also conclude that a genuine issue of material fact exists, albeit a different one than the one the Court of Appeals identified.

## I.   BACKGROUND

Our analysis in this case relies heavily on our answers in *Brandrup* to the federal court's certified questions, and the reader would be well-advised to review our opinion in that case before delving into the present opinion. Of particular importance is the general discussion of mortgage loans and trust deeds, recordation requirements, and the OTDA that precedes the discussion of the certified

questions. *Brandrup*, 353 Or at 675-82. Because that portion of the *Brandrup* opinion covers most of the necessary ground, we limit the background discussion in the present case to a brief description of MERS and its function in the home mortgage business.

MERS and its parent company, MERSCorp, were created in the 1990's in response to a sharp increase in trading in mortgage loans that resulted from a developing secondary market for mortgage-backed securities. In an effort to make that market more efficient, companies that were involved in making and trading in mortgage loans, including the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac), combined to create MERS. *See, generally,* R. K. Arnold, *"Yes, There is Life on MERS,"* 11 Prob & Prop 33, 34 (1997). MERS operates a national electronic database, the MERS System, which privately tracks transfers of ownership interests and servicing rights in mortgage loans among the lenders, investors, and other companies that are its members.

The present case examines the MERS arrangement in the specific context of the OTDA. The OTDA allows for nonjudicial foreclosure of a particular kind of security instrument, a trust deed. A trust deed conveys an interest in real property—a lien—to a trustee, who holds that interest, in trust, to secure an obligation owed by the "grantor" of the trust deed to the trust deed's "beneficiary." ORS 86.705(2), (4), (7). Under the OTDA, if the grantor defaults on his or her obligation to the beneficiary (by, for example, failing to repay a loan made by the beneficiary), the trustee may foreclose the trust deed by "advertisement and sale" of the trust property, if certain prerequisites are satisfied. ORS 86.710, ORS 86.735. Among the listed prerequisites is a requirement that

"the trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee [be] recorded in the mortgage records in the counties in which the property described in the deed is situated[.]"

ORS 86.735(1).

## II.   FACTS AND PROCEDURAL HISTORY

With that background in mind, we turn to the facts of the present case. In 2006, plaintiff obtained a loan from Greenpoint Mortgage Funding, Inc. to finance the purchase of a home in Clackamas County, memorializing her promise to repay the loan, with interest, in an "adjustable rate note." The note expressly stated that the note might be transferred from "Lender" (Greenpoint) to a different "Note Holder." Along with the note, plaintiff executed a "Deed of Trust" that (1) identified MERS as the trust deed's beneficiary, but solely as "nominee for lender"; and (2) conveyed an interest in the property plaintiff had purchased to a named trustee, to secure the promise of repayment memorialized in the note and other related promises. Specifically, the trust deed provided:

> "The beneficiary of the Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale [the property plaintiff had financed], together with all the improvements now or hereafter erected on the property \*\*\*. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

In a separate definition section, the trust deed identified plaintiff as "Borrower," Greenpoint as "Lender," First American Title Insurance Co. as "Trustee," and MERS as "the beneficiary under this Security Instrument." The trust deed provided that, although "Borrower" would be notified in writing of any change in the entity collecting payments due under the note, "the note or a partial interest in the note

(together with this Security Instrument) c[ould] be sold one or more times without prior notice to borrower."

The trust deed was recorded in the Clackamas County real property records within a few days after its execution. Shortly thereafter, plaintiff received notice that the servicing rights to her loan had been transferred to GMAC Mortgage, LLC (GMACM). Plaintiff thereafter made her payments to GMACM. At some point, plaintiff allegedly ceased to make payments.

In April 2009, plaintiff received a "Trustee's Notice of Sale" from Executive Trustee Services (ETS), which purported to be acting as agent for the trustee.[1] The notice referred to the trust deed that plaintiff had signed and stated that, as provided in ORS 86.735, "the beneficiary [MERS] and the trustee" had elected to sell the property identified in the trust deed (*i.e.*, plaintiff's home), at a specified place and time, to satisfy the obligation secured by the trust deed. Plaintiff wrote to ETS, demanding that the scheduled sale be cancelled. In her letter, plaintiff pointed out that the loan had been originated by Greenpoint, that she had never been advised of any assignment of the trust deed to MERS, ETS, or GMACM, that there was no record of any such assignment, and that it thus appeared to her that the trustee's sale had been instituted by a party or parties that had no rights in either the note or the trust deed and, therefore, had no authority to nonjudicially foreclose. The letter ended by demanding copies of various documents relating to the trust deed, including documents establishing the "entire chain of title to the Deed of Trust and note." Plaintiff did not hear back from ETS, but the trustee's sale was rescheduled for a later date.

Before the rescheduled sale occurred, plaintiff filed this action for injunctive and declaratory relief, naming MERS, GMACM, and ETS as defendants. In her complaint, plaintiff described the events outlined above, and further alleged that

---

[1] ETS purports to be the agent of the current trustee, LSI Title Company of Oregon, LLC. The parties generally refer to ETS as the trustee and, hereinafter, for the sake of simplicity, we do so as well.

> "plaintiff has never been provided with any Assignment or other document demonstrating the transfer of the full and unencumbered interest in both the Note and the Deed of Trust from the original lender *** to any person or entity *** and has no knowledge how defendant MERS or defendant ETS ever acquired any legal rights under the Note and Deed of Trust sufficient to institute foreclosure proceedings."

Plaintiff sought to enjoin the scheduled sale on the ground that defendants had failed to demonstrate that they had a legal interest in the trust deed or the underlying note that would entitle them to foreclose. Plaintiff also sought declarations that (1) defendants did not have the necessary legal or equitable interests in either the note or the deed of trust to institute a foreclosure under the OTDA; (2) there had been no lawful assignment of the deed of trust "from the original lender to any of the defendants;" and (3) defendant's attempt to foreclose by advertisement and sale was "legally defective and precluded from enforcement."

Defendants filed a motion for summary judgment, asserting it was "indisputable" that plaintiff had defaulted on her loan and that ETS and GMACM were proper parties to initiate the foreclosure. With respect to the latter point, defendants asserted that MERS was "the beneficiary of the Deed of Trust, as nominee of the original lender's assignee, Aurora Bank"; that ETS was the agent of the "duly appointed successor" to the original trustee; and that GMACM received the right to "service" the loan from the original lender and, under its servicing agreement with the new owner of the loan, Aurora Bank,[2] GMACM was authorized to initiate foreclosure on Aurora Bank's behalf.[3] Defendants attached an affidavit by a GMACM employee and certain other materials in support of those assertions. Plaintiff responded that defendants' evidence was insufficient because it failed to show that (1) MERS had a beneficial interest in

---

[2] Aurora Bank, the reputed owner of the note, is not a party to this action.

[3] ORS 86A.175 authorizes certain entities to "service or collect" mortgage loans "with the permission of the lender, note owner, note holder or other holder of an interest in a note." For purposes of that statute, "service[ing] or collect[ing]" includes "exercising contractual, statutory or common law remedies, such as *** judicial or nonjudicial foreclosure." ORS 86A.175(3)(e)(C).

the property that would allow it to initiate foreclosure or to assign or transfer any interest in the property to other defendants; or (2) GMACM or ETS had obtained an interest in the trust deed by means of valid assignments or transfers that would allow them to foreclose.

At the hearing on the summary judgment motion, the parties' arguments shifted away from a general debate about the sufficiency of MERS' and the other defendants' "interests" in the note and trust deed and toward a more specific statutory question—whether the precondition that "any assignments of the trust deed by the beneficiary * * * [be] recorded in the mortgage records of the [relevant] county," ORS 86.735(1),[4] had been satisfied. Defendants argued that, insofar as the beneficiary originally named in the trust deed remained the beneficiary at the time foreclosure proceedings were initiated, there were no "assignments of the trust deed by the beneficiary" to record. Plaintiff argued that MERS was not the "beneficiary" within the meaning of ORS 86.735(1) and that there was reason to believe that the true beneficiary, Greenpoint, had assigned the trust deed, because a party who was a stranger to the original transaction was trying to foreclose. According to plaintiff, the assignee's failure to record that or any subsequent assignment raised a factual question as to whether a precondition of nonjudicial foreclosure had been satisfied.

The trial court granted defendant's motion for summary judgment. The court concluded that MERS was the trust deed's beneficiary, and it also appeared to conclude that ETS was a lawfully appointed trustee that was authorized to foreclose under ORS 86.735 if the statutory requirements were satisfied. The court further concluded that, insofar as there was no evidence of any assignment of the trust deed by ETS or MERS, there was no triable issue of fact with respect to the contention that defendants had failed to satisfy the recording requirement in ORS 86.835(1).

Plaintiff appealed, arguing that the summary judgment record contained evidence that Greenpoint, and not MERS, was the trust deed's original "beneficiary," and

---

[4] ORS 86.735(1) is set out in its entirety above, 353 Or at 651.

that Greenpoint had transferred its interest in the trust deed without recording the transfer. Plaintiff argued that, in light of that evidence, questions of fact remained as to (1) whether MERS or the other defendants had a sufficient interest in the trust deed to initiate foreclosure under the OTDA, and (2) whether the recording requirement in ORS 86.735(1) had been satisfied.[5]

The Court of Appeals reversed. *Niday*, 251 Or App at 301. After examining the definition of "beneficiary" in ORS 86.705(2) in the context of the surrounding statutes and case law, it concluded that, regardless of the trust deed's designation of MERS as "the beneficiary under this Security Instrument," Greenpoint, the lender whose right to repayment the trust deed secured, was, at inception, the trust deed's "beneficiary" for purposes of the OTDA. *Id.* at 298-99. After observing that there was evidence in the summary judgment record that Greenpoint had transferred its interest in the promissory note, and that, under this court's cases, a mortgage (or trust deed) is transferred by operation of law when the note it secures is transferred, the court considered whether such a transfer of the promissory note would constitute an "assignment[] of the trust deed" for purposes of the statutory requirement at ORS 86.735(1). *Id.* at 299-300.

The Court of Appeals rejected defendants' contention that the statutory term "assignments" refers only to formal, written assignments that are capable of recordation in their own right. It held that the evidence that Greenpoint had transferred the note created a genuine issue of material fact as to whether ORS 86.735(1) had been satisfied. *Id.* Notably, the Court of Appeals did not address plaintiff's other argument for enjoining, and declaring invalid, the contemplated foreclosure—that MERS and the other defendants had no legal or equitable interest in the trust deed that would permit them to initiate foreclosure under the OTDA.

---

[5] The latter point was raised in the Court of Appeals by *amicus curiae* Oregon Trial Lawyers Association (OTLA). The Court of Appeals rejected defendants' contention that that argument had not been preserved in the trial court, and gave plaintiffs the benefit of OTLA's argument. 251 Or App at 293 n 11, 300 n 15.

III.   DOES A GENUINE ISSUE OF FACT REMAIN
AS TO WHETHER THE OTDA'S RECORDING
REQUIREMENT, ORS 86.735(1), WAS SATISFIED?

Before this court, defendants argue that, contrary to the Court of Appeals' decision, there is no evidence in the summary judgment record that creates a triable issue of fact as to whether a "beneficiary" of the trust deed made an "assignment" of the trust deed within the meaning of the recording requirement in ORS 86.735(1). Defendants begin with the Court of Appeals' rejection of MERS's status as "beneficiary." They argue that MERS can be, and is, the "beneficiary" of the trust deed at issue, by virtue of its designation as such in the trust deed.

Defendants rely on the OTDA's definition of the term, at ORS 86.705(2):

"As used in ORS 86.705 to 86.795:

"* * * * *

"(2)  'Beneficiary' means a person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest, and who is not the trustee unless the beneficiary is qualified to be a trustee under ORS 86.790(1)(d)."

Defendants contend that the phrase "named or otherwise designated" shows that the legislature intended that the parties to a trust deed have the ability to contractually identify the "beneficiary" without regard to whom the trust deed actually benefits. Defendants posit that the definition must be read consistently with "long established Oregon statutory and common law principles authorizing agents *** to act as beneficiary and hold legal and record title to interests in real estate." In other words, defendants argue, the "named or otherwise designated" wording shows that the legislature intended to permit the lender (who usually is "the person for whose benefit the trust deed is given") to designate its agent or nominee as the trust deed's beneficiary.

This court rejected all of those arguments, and others like it, in *Brandrup*, 353 Or at 682-89. In *Brandrup*, we noted that a proposed interpretation of the definition of the word "beneficiary" in ORS 86.705(2) that is virtually identical to

the one that defendants now offer failed to account for a significant portion of the definition's words, which focused on the beneficiary's function in the trust deed arrangement as "the person for whose benefit the trust deed is given." We reasoned that, to give all of the words of the definition their intended meaning, it was necessary to conclude that, *in addition to* being the person "for whose benefit the trust deed is given," the beneficiary must be "named or otherwise designated" as such in the trust deed. *Id*. at 684. We observed that, in a typical trust deed transaction where the obligation that is secured by the trust deed is memorialized in a promissory note, the "beneficiary" would be the person who is entitled to repayment of the note obligation, that is, either the lender or the lender's successor in interest. *Id*. at 661-62. Finally, we concluded that, although a lawful agent might have authority to act on the true beneficiary's behalf with respect to the trust deed, and might even appear on documents in the beneficiary's stead, such an agent "cannot *become* the 'beneficiary' for purposes of [the] statutory requirement [set out at ORS 86.735(1), which] is defined, in part, by the status of the 'beneficiary.'" *Id*. at 666.

In the trust deed at issue here, MERS is "named" as the beneficiary ("The beneficiary of the Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns and the successors and assigns of MERS)[.]"). But MERS is not "the person for whose benefit the trust deed is given." Rather, the terms of the trust deed "designate" the "Lender" (Greenpoint) as that person ("This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this security Instrument and the Note."). Thus, for purposes of the requirement for nonjudicial foreclosure that "any assignments of the trust deed by the *** beneficiary" be recorded, the "beneficiary" of the trust deed is Greenpoint or its successors, and not MERS.

Defendants argue, however, that even if "naming" MERS as the beneficiary in the trust deed is not sufficient, by itself, to make it so, the fact remains that the trust deed conveys to MERS the right to exercise "all" of the beneficial owner's interests under the trust deed (as the beneficial

owner's agent) if that should become necessary to qualify MERS as the trust deed's beneficiary. Defendants refer to the following provision in the trust deed:

> "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, *but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests*, including, but not limited to, the right to foreclose and sell the property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

(Emphasis added.) Anticipating an argument that the trust deed beneficiary must have a right to receive repayment of the loan obligation that the trust deed secures, defendants contend that the foregoing provision conveys to MERS, "if necessary to comply with law or custom," a right to receive payment of the loan obligations on behalf of the lender or noteholder.

But the right to "receive" payment on a note "on behalf of" a principal is distinct from the right to repayment on one's own behalf. As discussed above, it is the latter right that defines a trust deed "beneficiary" in the ordinary trust deed transaction. 353 Or at 658 (the beneficiary is the person "entitled to repayment of the note obligation"). Thus, as this court observed in *Brandrup*, with respect to identical wording in the trust deeds at issue in that case, "[u]nless the *** provision transforms MERS into [the person to whom the obligation that the trust deed secures is owed], it cannot transform MERS into the 'beneficiary' of the trust deed." *Brandrup*, 353 Or at 692.

As broad as the "law or custom" provision appears to be, it is not broad enough to convey that particular right. As this court explained in *Brandrup*:

> "The provision first states that MERS holds 'only legal title to the interests *granted by Borrower* in this Security Instrument.' When the provision thereafter states that MERS has the right 'to exercise any or all of *those* interests,' if necessary to comply with law or custom, it refers to the interests 'granted by the borrower in this security instrument.'"

*Id.* at 692 (emphasis in original). But the only interests that are granted by a borrower in a trust deed are a legal interest in the real property that the trust deed burdens and that legal interest's beneficial counterpart. Thus, the "law or custom" provision cannot convey to MERS the right that would qualify it as the trust deed's beneficiary—the right to repayment of the obligation that the trust deed secures. It follows that, regardless of MERS' designation as such in the trust deed, and regardless of wording in the trust deed that purports to grant MERS various "interests" belonging to the lender "if necessary to comply with law or custom," MERS cannot be the beneficiary of the trust deed in this case. Rather, insofar as the trust deed "secures to Lender" the "repayment of the Loan" and other covenants relating to that obligation, the lender (Greenpoint) was the original "beneficiary" of the trust deed for purposes of the OTDA. The Court of Appeals did not err in so holding. *Niday*, 251 Or App at 298-99.

Defendants argue that, in any event, the Court of Appeals erred in concluding that an issue of fact existed with respect to whether there had been any "assignment[]" of the trust deed" by Greenpoint that triggered the recording requirement in ORS 86.735(1). In so holding, the Court of Appeals relied on (1) evidence that the promissory note secured by the trust deed had been transferred, and (2) the legal premise that a trust deed is "assigned" by operation of law when the underlying promissory note is transferred. *Niday*, 251 Or App at 299. But defendants contend that, when, as a prerequisite to nonjudicial foreclosure, the legislature adopted the requirement in ORS 86.835(1) that "any *assignments* of the trust deed by the trustee or the beneficiary" be recorded, it did not intend that "assignments" include transfers of a promissory note that result in an equitable transfer of the associated trust deed by operation of law. To the contrary, defendants argue, the legislature intended to require recordation only of formal, written assignments of the trust deed.

Again, this is an issue that was discussed and decided in *Brandrup*, but this time, *Brandrup* supports defendants' interpretation of the statutory phrase. In *Brandrup,* this court concluded that the phrase "any assignments" was not,

itself, dispositive. We noted that ORS 86.735(1)—and the very concept of recordation—assumes the existence of an assignment in recordable form, *i.e.*, a written document that is separate from the note and that describes the burdened property. We acknowledged that parties to the transfer of a promissory note can always memorialize the transaction in a separate writing that is recordable, but we observed that ORS 86.735(1) does not express any requirement that that be done. *Brandrup*, 353 Or at 696-97.

We noted, further, that ORS 86.735(1) bears a resemblance to a statute that was in effect when the OTDA was enacted in 1959 that provided, in part, that "*every assignment* of mortgage shall be recorded," *former* ORS 86.070 (1959).[6] This court had interpreted that statute in *Barringer v. Loder*, 47 Or 223, 224-28, 81 P 778 (1905), as recognizing that a mortgage could be transferred by indorsement of the associated promissory note, but as only requiring the recording of those assignments of mortgage that were "in writing, executed and acknowledged with the same formality as required in deeds and mortgages of real property." We concluded in *Brandrup* that the legislature likely had *former* ORS 86.070 (1959) in mind when it adopted similar wording in ORS 86.735(1), and that it intended to assign a similar, narrow meaning to the term "assignment" in the latter statute. *Brandrup*, 353 Or at 698-99. We concluded, in other words, that in providing that a trustee may nonjudicially foreclose only if "any assignments of the trust deed by the trustee or beneficiary *** are recorded," ORS 86.735(1) refers to written assignments of a trust deed in recordable form, and not to assignments of trust deeds that result by operation of law by transfer of the note.

According to that understanding, although the Court of Appeals correctly observed that there is evidence in the summary judgment record that the trust deed's beneficiary, Greenpoint, sold the promissory note associated with the trust deed, that transaction does not qualify as an "assignment[] of the trust deed" for purposes of the recording requirement of ORS 86.735(1). Neither is there evidence in the summary judgment record of any "assignment" of the

---

[6] *Former* ORS 86.070 was repealed in 1965. Or Laws 1965, ch 252, § 1.

trust deed in the intended sense, that is, a formal, written assignment of the trust deed, itself. Thus, on the question of whether defendants violated ORS 86.735(1) by initiating foreclosure when Greenpoint sold the promissory note but did not record an assignment of the trust deed, there is no issue of material fact.

### IV.   DOES A GENUINE ISSUE OF FACT REMAIN?

That leaves us to consider whether a genuine issue of material fact exists that is pertinent to plaintiff's original challenge to the scheduled foreclosure sale—that none of defendants possessed a qualifying legal interest in the trust deed or note that would allow them to initiate foreclosure under the OTDA. That challenge is based on plaintiff's allegations that she had received a "Trustee's Notice of Sale" that referred to ETS as the trustee of the trust deed and MERS as its beneficiary, that, in spite of the trust deed's designation of MERS, the original beneficiary was the lender, and that plaintiff had no knowledge or information as to whether or how any of defendants had acquired any legal rights in the note and trust deed that were sufficient to institute foreclosure proceedings.

In support of their motion for summary judgment, defendants submitted (1) copies of the promissory note and trust deed; (2) an affidavit by an employee of the loan servicer (GMACM) describing what defendants believed were the relevant transactions; (3) a report from the MERS database showing the same transactions; and (4) a copy of MERS's appointment of ETS as a successor to the original trustee, showing that the appointment had been recorded in the county land records.[7] Defendants asserted that that evidence established that

> "GMACM, as the holder of the original note and servicer of plaintiff's loan, properly initiated the foreclosure of the Deed of Trust on behalf of MERS, the beneficiary of

---

[7] In the hearing, defendants apparently produced the original promissory note. It is unclear from the record what, if anything, the note showed about the person entitled to enforce the note or, if different, the owner of the note. We know that GMACM claimed to be "holding" the note in its capacity as servicer of the loan, and that GMACM did not claim to own the note or to act on its own behalf in the foreclosure proceeding. There is no evidence in the record as to whether or how the note had been transferred to GMACM.

the Deed of Trust as the nominee of the original lender's assignee, Aurora Bank. LSI [(ETS's principal)], the duly appointed successor trustee, properly executed the non-judicial foreclosure."

Plaintiff responded that defendants' evidence relied on the legitimacy of MERS's status as the trust deed's beneficiary. Plaintiff insisted that MERS was *not* the trust deed's beneficiary, but a mere nominee of the beneficiary, and that it therefore lacked authority not only to foreclose, but also to assign interests in the trust deed or underlying note to others. Plaintiff also pointed to defendants' failure to produce, in response to her demands, any document showing that MERS or ETS had acquired interests in the note and trust deed that would entitle them to nonjudicially foreclose.

Because the trial court did not include any explanation of its decision in its written order, its reasons for granting summary judgment for defendants must be discerned from its comments during the summary judgment hearing. Those comments suggest, on the one hand, that the court accepted MERS's designation as beneficiary in the trust deed as conclusive evidence of that status, and thus concluded that no triable issue of fact existed with respect to MERS's authority to initiate (or, specifically, to direct the trustee to initiate) a nonjudicial foreclosure proceeding. But the trial court also suggested that the question of whether the trustee was acting on behalf of a lawful beneficiary was a matter between the trustee and the beneficiary, not one that the borrower could assert to derail a foreclosure under the statute. At any rate, the court appeared to conclude that defendants' evidence established ETS's authority, as a validly appointed successor to the original trustee, to direct or participate in a nonjudicial foreclosure proceeding under ORS 86.735. The Court of Appeals' opinion did not address either of those apparent conclusions or the broader question of whether defendants had interests in the note and trust deed that would authorize them to proceed with foreclosure under the statute. We now turn to those issues.

We begin with the trial court's apparent conclusion that the summary judgment record conclusively established that MERS was the beneficiary of the trust deed and, thus,

was entitled to initiate a foreclosure proceeding. That determination appears to rest entirely on the fact that the trust deed, which was recorded in the pertinent real property records, identified MERS as its "beneficiary."

However, as discussed above, 353 Or at 658-60, and in *Brandrup*, 353 Or at 682-93, the fact that MERS was identified in the trust deed as the "beneficiary" does not make it so for purposes of the OTDA. Rather, the "beneficiary" is the person to whom the obligation that the trust deed secures is owed, *Brandrup*, 353 Or at 689, in this case, either the lender or its successor. As noted above, 353 Or at 660, under that meaning, MERS is not the trust deed's beneficiary. MERS therefore cannot claim any authority, *as the trust deed's beneficiary*, to initiate or direct the nonjudicial foreclosure of a trust deed.

Still, as this court recognized in *Brandrup*, 353 Or at 705-09, even if MERS lacks authority to act *as* the trust deed's beneficiary, it may have authority to act *on behalf of* the beneficiary if it can demonstrate that it has an agency relationship with the beneficiary and that the agency agreement is sufficiently expansive. Although in *Brandrup* we discussed that possibility in connection with the issue of MERS' authority to *assign* a trust deed, it would seem to apply equally to the present issue of MERS's authority to *foreclose* the trust deed. In either case, MERS' authority to act as the beneficiary's agent depends on who succeeded to the lender's rights, whether those persons manifested consent that MERS act on their behalf and subject to their control, and whether MERS has agreed to so act. *Brandrup*, 353 Or at 707 (citing *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 617, 892 P2d 683, 694 (1995)).

Although *Brandrup* is not a summary judgment case, it nevertheless is instructive with respect to how MERS' status as a trust deed beneficiary's agent, and the nature and scope of its authority as an agent, might be established. In that case, this court rejected the proposition that MERS's designation in a trust deed as "nominee for Lender and Lender's successors and assigns" established an agency relationship between MERS and the original

lender or any successor to the original lender. We did so primarily because the original lender and its successors were not signatories to the trust deed. 353 Or at 708-09. We acknowledged, however, that, depending on its terms, the much-discussed agreement between MERS and members *might* establish MERS's authority to act as a "common agent" for the original lender and any successors who are members of MERS. *Brandrup*, 353 Or at 689 n 7, 708-09. And, *Brandrup* aside, there is always the possibility of a separate agreement between MERS and a lender's successors in interest, authorizing MERS to act as the successors' agent in a foreclosure proceeding.

But, as far as we can tell, there is nothing in the summary judgment record in this case that identifies the successors to the original lender's interests or shows that MERS is authorized, as the agent of the successors to the original lender's interests, to initiate or direct a nonjudicial foreclosure proceeding under the OTDA. There is *some* evidence that the current owner of the note is Aurora Bank and that Aurora Bank is a member of MERS. But there is no evidence as to whether Aurora Bank is a successor to the original lender's interests. Nor is there evidence of an agency agreement between Aurora Bank and MERS, or between MERS and its members as a whole, much less one that authorizes MERS to initiate foreclosures on behalf of Aurora Bank. Further, there is some suggestion that GMACM is the "holder" of the note. If the note is negotiable, it is possible that GMACM is a successor to the original lender's interests or that both Aurora Bank and GMACM share that role; however, neither the record nor the parties' arguments establish those matters beyond genuine dispute.[8]

---

[8] The parties have not addressed the identity of the beneficiary if, as we conclude, it is not MERS. That issue is by no means academic. If a note is negotiable, the "party entitled to enforce the note" (the "PETE") under ORS 73.0301 may not be the same person as the owner of the note, that is, the party entitled to the economic benefits of the note. Because a mortgage or trust deed follows the note that it secures, *United States Nat. Bank v. Holton*, 99 Or 419, 428-29, 195 P 823 (1921), the potential separation of ownership and PETE status raises the question of whether a lender's successor—that is, the beneficiary—must be the owner, the PETE, or both? Most courts that have thus far addressed the issue have concluded that PETE status, not ownership, confers the right to foreclose. *See*, *e.g.*, *Edelstein v. NY Mellon*, 286 P3d 249, 257 (Nev 2012). Because the parties have not addressed the issue, we do not discuss it further here.

The trial court nevertheless appeared to reason[9] that the beneficiary's authority in a decision to proceed with nonjudicial foreclosure is immaterial. To the extent that the court so reasoned, we disagree. On the one hand, it is true that the trustee, and only the trustee, is authorized to foreclose a trust deed by advertisement and sale. ORS 86.710, ORS 86.735. However, the OTDA contemplates that the beneficiary of the trust deed—the original lender or its successor—is entitled to determine whether and how to foreclose a trust deed after default. For example, ORS 86.710 expressly provides that the beneficiary can reject the nonjudicial foreclosure procedure in favor of an ordinary judicial foreclosure. More importantly, the beneficiary has absolute authority to appoint a successor trustee at any time after a trust deed is executed under ORS 86.790(3), an authority that all but guarantees the beneficiary's control over any foreclosure decision.

However, even if the beneficiary's authority were immaterial, summary judgment still would be improper in the present case. That is so because, on the present record, MERS' involvement in the appointment of the current trustee casts doubt on the trustee's status. The trial court concluded that ETS was the lawfully appointed trustee ("of record, we have * * * the chain, if you will, back to the original trustee First American Title"). The trial court apparently relied on a document in the summary judgment record showing that MERS had appointed ETS as successor to the original trustee, and also showing that the appointment had been recorded in the Clackamas County real property records. But, appointments of a successor trustee may only be made by the trust deed beneficiary, ORS 86.790(3), and, as discussed, MERS is not, and never has been, the beneficiary of the trust deed for purposes of the OTDA. In the absence of evidence in the record showing the identity of the lender's successors in interest and that MERS had authority to act for those successors in interest,[10] an issue of fact remains as

_____

[9] The court opined that the foreclosure of the trust deed at issue could proceed, without regard to whether MERS was authorized to act as the trust deed's beneficiary, because "we have a trustee and the trustee is foreclosing."

[10] As discussed above, 353 Or at 665, there is nothing in the summary judgment record that establishes MERS's authority to act as the agent for anyone.

to the validity of ETS's appointment as successor trustee, and, in consequence, its authority to initiate and pursue a nonjudicial foreclosure proceeding under the OTDA.[11] It follows that the trial court erred in granting summary judgment to defendants.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to that court for further proceedings.

**KISTLER, J.,** concurring in part and specially concurring.

For the reasons stated in the opinion concurring in part and dissenting in part in *Brandrup v. ReconTrust Co.,* 353 Or 668, ___ P3d ___ (2013), I concur in part in the majority's reasoning and in its judgment.

Balmer, C. J., joins in this opinion concurring in part and specially concurring.

---

[11] This same logic would apply to any contention that GMACM had authority to direct nonjudicial foreclosure as the servicer of the loan with the lender's or note owner's/holder's permission to proceed, ORS 86A.175(1), (3)(e)(C). Even if there were undisputed evidence in the record showing that GMACM had the required status or authority to direct a nonjudicial foreclosure (and there is not), the uncertain state of the record with respect to ETS's status as the trustee still would preclude summary judgment.