Aleksander **MIKITYUK** and Olititsa Mikityuk, individuals, Plaintiffs,

v.

**NORTHWEST TRUSTEE SERVICES, INC., Mortgage Electronic Registration Systems, Inc. and Wells Fargo Bank, N.A., Defendants.**

No. 3:12–cv–1518–PA.

United States District Court, D. Oregon.

June 26, 2013.

David P. Smith, The Smith Firm, PC, West Linn, OR, for Plaintiffs.

Skiff R. Larson, Routh Crabtree Olsen P.C., Pilar C. French, Robert E. Maloney, Jr., Brian T. Kiolbasa, Lane Powell, PC, Portland, OR, for Defendants.

## ORDER

PANNER, District Judge.

Defendants Mortgage Electronic Registration Systems, Inc. (MERS) and Wells Fargo Bank, N.A. (Wells Fargo) move to dismiss plaintiffs' complaint. For the reasons stated below, defendants' motion to dismiss (# 25) and request for judicial notice (# 28) are GRANTED. This action is dismissed, with prejudice.

## BACKGROUND

Except where otherwise noted, the following facts are taken from plaintiffs' amended complaint (# 22). In 2003, plaintiffs Aleksander and Olititsa Mikityuk received a home loan from Mortgage Market, Inc (MMI). Plaintiffs executed a deed of trust with defendant MERS named as the beneficiary. MMI was dissolved in 2005. In 2009, four years after the dissolution of MMI, MERS assigned the deed of trust to Wells Fargo. Defendant Northwest Trustee Services, Inc. (Northwest) was then named successor trustee. Northwest recorded a Notice of Default and Election to Sell (NOD) in December 2009. Northwest sold plaintiffs' property at a trustee's sale in September 2010. Although not mentioned in the complaint, NW Property Wholesalers, LLC, which is not a party to this action, purchased the property at the trustee's sale. (Trustee's Deed, Dec. 21, 2013 Kiolbasa Decl. Ex. 1, 2.)

Nineteen months later, in June 2012, plaintiffs filed this action challenging the sale.[1] Plaintiffs argue the foreclosure was wrongful and seek declaratory relief. Plaintiffs also bring two claims under Oregon's Uniform Deceptive Trade Practices Act.

Plaintiffs present several arguments in support of their claims that the foreclosure was wrongful. Plaintiffs raise theories about "robo-signing." Plaintiffs challenge MERS's role in the foreclosure proceedings, alleging MERS was not a valid beneficiary.[2] Plaintiffs argue that naming

---

1. Defendants removed the case in August 2012.

2. After oral argument, the Oregon Supreme Court issued opinions in *Brandrup v. Recon-*

MERS on the deed of trust without the registered trademark symbol (®) was deceptive and misleading. Plaintiffs allege defendants violated the Oregon Trust Deed Act (OTDA) by failing to record all assignments of the deed of trust. Based on the alleged violations, plaintiffs seek declaratory relief from the court that certain documents recorded in the county land records, including the NOD, are "cancelled and or void[.]" (Am. Compl. ¶ 59.)

Several facts are not in dispute. Plaintiffs admit signing the note and deed of trust at issue.[3] Plaintiffs admit receiving the loan funds as described in the note and deed of trust. Plaintiffs admit receiving the NOD. Plaintiffs admit that at the time of the sale, they were in default.[4] Finally, plaintiffs admit defendants sold the home at a trustee's sale and that defendants recorded a trustee's deed following the sale. As noted, plaintiffs filed this complaint nineteen months after the trustee's sale and subsequent recording of the trustee's deed.

## STANDARDS

On a motion to dismiss, the court must review the sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). This plausibility standard requires the pleader to present facts that demonstrate "more than a sheer possibility" that defendant is liable for the alleged misconduct. *Id.*

In considering a motion to dismiss, a court must distinguish between the factual allegations and legal conclusions asserted in the complaint. *Id.* All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *American Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir.2002). At the pleading stage, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Therefore, if the well-pleaded factual allegations plausibly give rise to the relief sought, a court shall deny the motion to dismiss. *Iqbal*, 129 S.Ct. at 1950.

*Trust Co.*, 353 Or. 668, 303 P.3d 301 (2013) and *Niday v. GMAC Mortgage, LLC*, 353 Or. 648, 302 P.3d 444 (2013). The opinions concerned MERS and the OTDA. Because of my conclusion that plaintiff's post-sale challenge here is barred, and because *Brandrup* and *Niday* dealt with pre-sale challenges to non-judicial foreclosure sales, neither case affects the outcome here.

3. Plaintiffs allege MMI, the "lender" identified in the note, did not provide the funds to plaintiffs. Regardless, plaintiffs admitted, most recently at the May 15, 2013 oral argument, receiving the funds (provided by an unknown party) and signing the note and deed of trust, both of which identified MMI as the party lending the funds to plaintiffs.

4. In their Response (# 39), plaintiffs argue that although they failed to make payments according to the terms of the note, the servicer continued to make payments into the securitized trust pursuant to the terms of the Pooling and Servicing Agreement. (Resp. 3–4.) Regardless, plaintiffs admit not making the monthly payments and were thus in default according to the express terms of the deed of trust. (*See* Am. Compl., Ex. A; Deed of Trust, 19(a)(i) (lender may accelerate debt if "Borrower defaults by failing to pay in full any monthly payment" required by deed of trust).).

## DISCUSSION

### 1. JUDICIAL NOTICE

██ Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of a fact outside the pleadings if the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Western Radio Services Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n. 4 (9th Cir.2008) (quoting Fed.R.Evid. 201). So long as the court takes notice of undisputed matters of public record, a Rule 12 motion is not converted into a motion for summary judgment when the contents of the documents are alleged in the complaint. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir.2012).

Defendants request the court take judicial notice of the deed of trust at issue; the Service Mark Principal Register and associated trademark for "real estate database services" issued by the United States Patent and Trademark Office; excerpts of Oregon legislative history; and orders from two state court cases. (Req. for Judicial Notice ¶¶ 1–5.) All are matters of public record whose accuracy is unquestioned. Defendants' request for judicial notice (# 28) is GRANTED.

### 2. MOTION TO DISMISS

#### 2a. Plaintiffs' Claims Under Oregon's UTPA

██ In responding to defendants' motion to dismiss, plaintiffs request leave to amend their UTPA claims. (Resp. 14 ("All of Plaintiffs' UTPA claims should have been brought under ORS § 646.608 and not ORS § 646.607.").) Leave to amend, under any section of the UTPA, is futile. Plaintiffs obtained the loan in 2003. The UTPA, however, did not apply to "extensions of credit" in 2003. ORS 646.605(6) (2003); *see Haeger v. Johnson*, 25 Or.App.

131, 134–35, 548 P.2d 532 (1976) (UTPA does not apply to "loans of money"); *see also Lamm v. Amfac Mortg. Corp.*, 44 Or.App. 203, 204–05, 605 P.2d 730 (1980) (UTPA does not apply to "loans and extensions of credit").

██ Additionally, even assuming the UTPA applied to plaintiffs' loan, plaintiffs' claims are untimely. The UTPA contains a one-year statute of limitations to claims under ORS 646.608. ORS 646.638(6). While the UTPA did not even apply to loans at the time plaintiffs received the loan at issue, plaintiffs in any case failed to bring the UTPA claims until 19 months after the trustee's sale. Plaintiffs UTPA claims are therefore untimely and dismissed, with prejudice.

#### 2b. Plaintiffs' Claims for Wrongful Foreclosure and Declaratory Judgement

██ The question presented here is whether a party who admits being in default, and who admits receiving notice of a trustee's sale, may challenge the validity of that sale nearly two years after the trustee's sale. In answering that question I assume, as I must on a motion to dismiss, that defendants violated the OTDA as alleged by plaintiffs.

Plaintiffs argue that because MERS was not a valid beneficiary under the OTDA, any transfers or assignments made by MERS "must be deemed void." (Resp., 5.) If correct, plaintiffs' arguments would render the sale void. (*See* Resp., 7 (alleging MERS's involvement constitutes "fraud in the factum" and "yields an instrument that is void, and not merely voidable.").) Citing ORS 86.770(1), which states the trustee's sale "forecloses and terminates" one's property interest in certain scenarios, defendants argue that any challenge to a non-judicial foreclosure, other than chal-

lenges relating to a lack of notice, must be made before the trustee's sale. The answer to the question presented turns on the effect of ORS 86.770(1), and more generally on the dual objectives of the OTDA.

In this question of statutory interpretation, I turn to the text and context of ORS 86.770(1), and to any useful legislative history. *State v. Gaines*, 346 Or. 160, 171–72, 206 P.3d 1042 (2009). "A statute's context includes other provisions of the same or other related statutes, the pre-existing statutory framework within which the statute was enacted, and prior opinions of this court interpreting the pertinent statutory wording." *In re Marriage of Polacek*, 349 Or. 278, 284, 243 P.3d 1190 (2010) (internal citations omitted). When interpreting the statute, I must not insert language the legislature omitted, nor omit what the legislature inserted. ORS 174.010. The ultimate goal is to discern the intent of the legislature. ORS 174.020.

The main statute in question, ORS 86.770, states:

> (1) If, under ORS 86.705 to 86.795, a trustee sells property covered by a trust deed, the trustee's sale forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given under ORS 86.740 and 86.750 or to a person that claims an interest by, through or under the person to which notice was given. A person whose interest the trustee's sale foreclosed and terminated may not redeem the property from the purchaser at the trustee's sale. A failure to give notice to a person entitled to notice does not affect the validity of the sale as to persons that were notified.

As noted, defendants argue ORS 86.770(1) requires any challenges to a non-

judicial foreclosure (other than those based on notice) be made before to the trustee's sale. The phrase "the trustee's sale forecloses and terminates the interest in the property to a person in which notice of the sale was given" could not be more clear. The ambiguity comes in the opening portion of ORS 86.770(1), *"If, under ORS 86.705 to 86.975,* a trustee sells property covered by a trust deed...."* (Emphasis added.) ORS 86.705 to 86.795 encompasses the entire OTDA.

One interpretation is that in order to "foreclose and terminate" another's property interest, the trustee must strictly comply with every word of every section of the OTDA. For example, ORS 86.755(3) provides that the trustee "shall" deliver the trustee's deed to the purchaser within 10 days of payment. Under the above interpretation, a transfer of the trustee's deed 11 days after payment would not comply with the OTDA and would not foreclose and terminate the grantor's property interest, even if the grantor received proper notice of the sale.[5]

Another interpretation is that if a trustee utilizes the OTDA to conduct a trustee's sale., the trustee's sale "forecloses and terminates" the interest of the party receiving notice, despite any errors alleged after-the-fact. The last sentence of ORS 86.770(1) states that not all failures to strictly follow every portion of the OTDA will fail to foreclose and terminate a notified party's interest. ("A failure to give notice to a person entitled to notice does not affect the validity of the sale as to persons that were notified.")

As to one who receives notice, as is true of plaintiffs here, but alleges other violations of the OTDA, ORS 86.770(1) is ambiguous as to whether that person's

---

**5.** Throughout this order, consistent with the facts at hand, any use of "grantor" refers to a grantor of a "residential trust deed" as defined in ORS 86.705(5).

property interest is "foreclosed and terminated."

Indeed, there are several other reasonable interpretations of when a trustee's sale is "under ORS 86.705 to 86.795." These interpretations fall somewhere in between the interpretations noted above. Using only common sense, it is apparent that some provisions of the OTDA are more important than others. For example, while ORS 86.735(2) provides that there must be a default on an obligation secured by a deed of trust in order for the trustee to conduct a non-judicial foreclose sale, ORS 86.795 merely sets the compensation of the trustee (at somewhere at or above $100.00).

Considering that some provisions of the OTDA appear more vital than others, a plausible interpretation of ORS 86.770(1) is that certain requirements, such as the provision in ORS 86.735(2) that the grantor must be in default, must be met in order not only to foreclose and terminate another's property interest, but also to have a valid trustee's sale in the first place. *See In re Names*, 2011 WL 1837819 at *4 (Bankr.D.Or.) ("Default is a precondition for the trustee's authority to sell and thus for a valid sale."); *Celestino v. Recontrust Co. N.A.*, 2012 WL 1805495 at *3 (D.Or.) (trustee obtains authority to conduct sale, and ORS 86.770(1) applies, only after pre-

conditions found in ORS 86.735 are met); *Peterson v. Deutsche Bank Nat'l Trust Co.*, 2012 WL 1831837 at *3–4 (D.Or.) (same, and concluding ORS 86.770 does not bar post sale challenges).

Because the plain language of ORS 86.770(1) lends itself to several reasonable interpretations, the statute is ambiguous as to when a trustee's sale "forecloses and terminates" another's property interest. Also unclear is whether one whose interest was foreclosed by the trustee's deed may raise post-sale challenges to the proceedings. While the statute is ambiguous, the context and legislative history of the OTDA is helpful in discerning the legislative intent and thereby answering the question presented.[6]

Before the enactment of the OTDA, real estate loans in Oregon were secured by mortgages, which could be foreclosed only via a judicial foreclosure. *Niday v. GMAC Mortgage, LLC*, 251 Or.App. 278, 282, 284 P.3d 1157 (2012) *aff'd and remanded*, 353 Or. 648, 302 P.3d 444 (2013). Then, as now, the grantor of a mortgage had a statutory right of redemption following a court-ordered foreclosure sale. *Niday*, 251 Or.App. at 282, 284 P.3d 1157 (internal citations omitted); ORS 88.080. Seeking to avoid the statutory right of redemption involved in a judicial foreclosure, lenders sought to "streamline" the foreclosure pro-

---

**6.** I note that despite the impact of ORS 86.770(1) on their claims (and property interests), plaintiffs mention the statute in passing on just two pages of their 16 page response. Plaintiffs' discussion of ORS 86.770(1) consists of:

*Niday* makes clear MERS, Inc. cannot be the beneficiary of the Deed of Trust thus any action taken, by MERS, Inc. to transfer or convey a beneficial interest to another party fails. In addition, each of Defendants' arguments as to the Trustee's Sale is premised on the assertion that MERS, Inc., had the authority to transfer assets, interest and authority to others based on its false

and misleading language found in the DOT that MERS, Inc. has authority as mortgagee and beneficiary and thus ORS 86.770 applies even though such was under false pretense.

\* \* \* \* \* \*

For ORS 86.770 to apply, MERS, Inc.'s act would need to have been lawful and proper. Here they were not. Plaintiffs' position to excuse the unlawful nature and let the fraudulent act stand is an act that would be against public policy and a violation of Plaintiffs' constitutional right to due process and equal protection under the law. (Resp. 7–8.)

cess. *Id.* (citing Minutes, Senate Judiciary Committee, SB 172, Feb. 19, 1957).

The legislature listened to the complaints of lenders and, in 1959, enacted the OTDA. *Id.* The legislature balanced the benefits to lenders with statutory protections for grantors of trust deeds. As described by the Oregon Court of Appeals:

The Act represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor. [The Act] confers upon a trustee the power to sell property securing an obligation under a trust deed in the event of default, without the necessity for judicial action. However, the trustee's power of sale is subject to strict statutory rules designed to protect the grantor, including provisions relating to notice and reinstatement.

*Staffordshire Investments, Inc. v. Cal–Western Reconveyance Corp.*, 209 Or.App. 528, 542, 149 P.3d 150 (2006).

The first section of the OTDA (after the definitions) provides that when a grantor executes a deed of trust to secure the performance of an obligation, a power of sale, which may be exercised upon default on the obligation, is conferred upon the trustee. ORS 86.710. The trustee may exercise the power of sale judicially or "by advertisement and sale in the manner provided in ORS 86.705 to 86.795[.]" *Id.*

"The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:". (1) certain documents are recorded in the county land records; (2) there is a default on the obligation secured by the trust deed; (3) a NOD is recorded in the county land records; and (4) (subject to certain limitations) there is no other pending action to recover the obligation secured by the trust deed. ORS 86.735.

The OTDA requires notice be sent to certain persons, ORS 86.740, including the grantor, ORS 86.737.[7] Amongst other requirements, the notice must: list the grantor, trustee, and beneficiary; describe the property; state the default and the sum owing on the obligation; state the property will be sold to satisfy the obligation; and list the date, time, and place the property will be sold. ORS 86.745. The notice must also state there exists the right to cure the default, stop the sale, and reinstate the obligation and deed of trust by paying the amount then due (together with certain statutory costs) at least five days before the sale. ORS 86.745(8); 86.753. The information contained in the notice of sale, *see* ORS 86.745, must also be recorded in the county land records, ORS 86.735(3).

The notice and reinstatement provisions "reflect the legislature's intent to protect the grantor against the unauthorized loss of its property and to give the grantor sufficient opportunity to cure any default." *Staffordshire*, 209 Or.App. at 542, 149 P.3d 150; *see NW Property Wholesalers, LLC v. Spitz*, 252 Or.App. 29, 34, 287 P.3d 1106 (2012) (function of notice requirement in ORS 86.740 "is to give people whose interest in property could be affected by a pending trust deed foreclosure and sale notice of the sale sufficiently in advance of the sale to enable them to act to protect their interests."). While the notice and reinstatement provisions protect those

---

7. If the property is occupied, subject to certain exceptions, ORS 86.750(1)(b), the notice must be served upon an occupant in accordance with Oregon Rules of Civil Procedure 7(D)(2) and 7(D)(3), ORS 86.750(1)(a). Service here was personally served on an occupant. (Aff. of Posting and Service, Am. Compl. Ex. E, 11.).

whose interests may be affected by the trustee's sale, the legislature included other provisions more favorable to lenders. After all, a competing purpose of the OTDA was to provide "creditors with a quick and efficient remedy against a defaulting grantor." *Staffordshire*, 209 Or. App. at 542, 149 P.3d 150.

As noted, ORS 86.770(1) provides that the trustee's sale "forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given ... A person whose interest the trustee's sale foreclosed and terminated may not redeem the property from the purchaser at the trustee's sale." Other provisions support the theory that anyone wishing to challenge any aspect of a nonjudicial foreclosure sale must do so before the trustee's sale or, at the latest, before the recording of the trustee's deed.

The trustee must deliver the trustee's deed to the purchaser within 10 days of the trustee's sale. ORS 86.755(3). The trustee's deed contains "a recital of the facts concerning the default, the notice given, the conduct of the sale and the receipt of the purchase money from the purchaser." ORS 86.775. The trustee's deed conveys the property interest of the grantor, to the purchaser. ORS 86.755(4).

■ As noted by the Oregon Court of Appeals, "certainty is an important component of the nonjudicial foreclosure sale remedy[.]" *Staffordshire*, 209 Or.App. at 542, 149 P.3d 150. Perhaps the best evidence that certainty and finality were crucial to the OTDA is found in ORS 86.780. That provision provides that once recorded, the recitals in the trustee's deed, along with affidavits regarding notice provided to the grantor and others, "shall be prima facie evidence in any court of the truth of

the matters set forth therein[.]" *Id.* Significantly, the recitals in the trustee's deed "shall be conclusive in favor of a purchaser for value in good faith relying upon them." *Id.* This provision, upon the recording of the trustee's deed, is an explicit "statutory presumption of finality[.]" *Staffordshire*, 209 Or.App. at 543, 149 P.3d 150.[8]

That protecting grantors "from the unauthorized foreclosure and wrongful sale of property" was, at least in the view of the legislature, secondary to the need for certainty and finality is apparent when examining the impact of ORS 86.780. Once recorded, the recitals in the trustee's deed, which include the "facts concerning the default," ORS 86.775, are conclusive as to a bona fide purchaser (BFP) relying upon those facts, ORS 86.780. That is, a grantor, *even one not actually in default*, is foreclosed from challenging the "facts concerning the default" as to a BFP following the recording of the trustee's deed. The legislature included this seemingly harsh bar in the original OTDA. Or. Laws, 1959 ch. 625 ¶¶ 14–15.

The presumption of finality does not seem as harsh when viewed against the notice provisions which, along with the reinstatement provision, the legislature included to protect the grantor against an unlawful foreclosure and allow time to cure the default. *See Staffordshire*, 209 Or. App. at 541, 149 P.3d 150; *see also Spitz*, 252 Or.App. at 34, 287 P.3d 1106. Presumably, the legislature believed anyone choosing to challenge a non-judicial foreclosure should raise those challenges before the sale. The notice of sale, which must be sent to all interested parties at least 120 days before the sale, ORS 86.740(1), is required to contain enough information and provide enough time for any interested party to decide whether to

---

**8.** The 1959 version of the OTDA contained a similar provision regarding the finality of the recitals in the trust deed upon a bonafide purchaser. Or. Laws, 1959 c. 625 § 15.

challenge the sale. *See* ORS 86.745 (notice of sale must include: the names of the grantor, beneficiary, and trustee; a description of the property; the amount owing on the obligation; and the default at issue). After all, the legislature expressly barred a grantor·from challenging many of the facts in the notice, at least as to a BFP, by including the statutory presumption of finality. ORS 86.775; 86.780. One who waits until after the trustee's sale risks having one's property interest "foreclosed and terminated." Or. Laws, 1959 ch. 625 ¶¶ 12; ORS 86.770(1) (2011).[9]

Other evidence supports the conclusion that certainty and finality trump the risk, in the legislature's view, of a wrongful sale of property. For example, although the legislature included the notice provisions to protect the grantor from wrongful foreclosure, a failure to give notice to the grantor does not result in a void sale. Or. Laws, 1959 ch. 625 ¶ 12 (failure to give notice to one entitled to notice does not affect validity of sale as to those notified); ORS 86.770(1) (same). Additionally, a trustee's deed in 1959 had to contain a recital of the facts concerning the notice given, Or. Laws, 1959 ch. 625 ¶ 14, and those facts were conclusive upon recording in favor of a BFP relying on such facts, Or. Laws, 1959 ch. 625 ¶ 15. In other words, the presumption of finality applied not only to the facts concerning the default, but also to the notice given.

In 2008, the legislature added a provision to the OTDA outlining the result of a failure to give notice to the grantor of a deed of trust. *See* ORS 86.739. Importantly, in such instances—without doubt a

violation of the OTDA if challenged before the sale—the sale is not simply set aside and rendered "void." Instead, assuming the grantor lacked actual notice of the sale at least 25 days before the trustee's sale, and provided the grantor notifies the trustee, beneficiary, or purchaser "not later than 60 days after the purchaser takes possession of the property" of the grantor's lack of actual notice, "[a] grantor shall have the same rights possessed by the holder of a junior lien or interest who was omitted as a party defendant in a judicial foreclosure proceeding[.]" ORS 86.739. The purchaser "shall have the same rights possessed by a purchaser at a sheriff's sale following a judicial foreclosure." *Id.*

Similarly, the OTDA does not void sales in which persons (other than the grantor) entitled to notice fail to receive actual notice of the trustee's sale. Instead, the OTDA sets out explicit procedures any other omitted person·must follow in order to preserve their rights. ORS 86.742. Assuming the omitted party lacked actual notice of the trustee's sale 25 days before the sale, the omitted party is placed in the same position as that of a junior lienholder omitted as a defendant in a judicial foreclosure proceeding. ORS 86.742(1). The omitted· person may also bring an action for damages against the trustee. ORS 86.742(2). The right to redeem and the right to pursue a claim for damages against the trustee are the sole rights available to an omitted party (other than the grantor) entitled to notice. ORS 86.742(6). Although the OTDA expressly allows one other than the grantor to bring an action against the trustee, ORS

---

**9.** The legislature originally included a provision allowing a grantor to prevent a nonjudicial foreclosure by recording a demand for a more traditional (and court-monitored) judicial foreclosure. Or. Laws, 1959 ch. 625 ¶ 2, 17; ORS 86.730(1) (1959). The right of a grantor to demand a judicial foreclosure was repealed in 1961. *See* Or. Laws, 1961 ch. 616 ¶ 2. Today, a grantor seeking to preserve any challenges, including, perhaps most importantly, a challenge as to the fact of whether one is actually in default, would be wise to file a complaint long before the date set for the trustee's sale.

86.742(2) the OTDA does not grant that same right to a grantor who fails to receive notice, ORS 86.739.

The text and context of the OTDA demonstrate that the legislature weighed efficiency, certainty, and finality against the threat of wrongful foreclosure and, after including notice provisions intended to protect the grantor from wrongful foreclosure, came to the conclusion that the need for certainty and finality trumped the risks of wrongful foreclosure. Although not many Oregon cases are helpful in answering the question presented here, the most helpful case supports the conclusion arrived at above following an examination of the text and context of the OTDA.

The most helpful Oregon case in answering the question presented is the Oregon Court of Appeals decision in *Staffordshire.* 209 Or.App. 528, 149 P.3d 150. Following a default by the grantor, the loan servicer in *Staffordshire* initially authorized the trustee to sell the property. Just before the sale, the servicer entered into a forebearance agreement with the grantor. The servicer neglected to tell the trustee about the forebearance agreement and the trustee proceeded with the sale. Later that day, the servicer learned of the sale and instructed the trustee not to issue the trustee's deed to the plaintiff, the high bidder at the sale. The plaintiff brought a breach of contract claim against the trustee, seeking lost profits it would have received upon reselling the property. The defendants argued the sale was void as the forebearance agreement deprived the trustee of the statutory power of sale.

■ The court noted ORS 86.735 states, "The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if" there is a default by the grantor, the performance of which is secured by the trust deed, with respect to any provision in the deed authorizing a sale in the event of a default. *Staffordshire,* 209 Or.App. at 534, 149 P.3d 150. "Thus, in Oregon, as a precondition to the trustee's exercise of the power of sale, there must be a present default by the grantor for which sale is authorized by the terms of the deed." *Id.* Due to the forebearance agreement, the grantor was not in default at the time of the sale, and thus there existed "no default for which the power of sale was authorized under ORS 86.735." *Id.* at 537, 149 P.3d 150.

Here, plaintiffs admit being in default at the time of the sale. *See supra* note 4. Therefore, unlike in *Staffordshire,* the trustee here had the power of sale authorized in 86.735(2). ORS 86.710 also conferred the power of sale upon the trustee here. *See* ORS 86.710 (power of sale conferred on trustee upon execution of trust deed secured by obligation, and such power may be exercised after a breach of the obligation.) Although the trustee here had the statutory authority to exercise the power of sale, additional analysis of *Staffordshire* further demonstrates, in accordance with the text and context of the OTDA, that plaintiffs are barred from challenging any aspect of the sale.

After concluding that the trustee in *Staffordshire* lacked the statutory authority to conduct the sale, the court examined the "effect of that lack of authority on the purported agreement of sale." *Id.* at 540, 149 P.3d 150. After noting the general maxim that agreements that cannot be made without violating a statute would not be enforced, the court turned to whether the Oregon legislature intended such agreements be rendered void.

After discussing the dual objectives of the OTDA, the court concluded the legislature intended for grantors and creditors to enter into forebearance agreements and

that enforcing a trustee's sale despite the existence of a forebearance agreement "would undermine the purpose of the Act." *Id.* at 542, 149 P.3d 150.

> "We are not persuaded that voiding agreements made in violation of ORS 86.735(2), under the circumstances present here, would frustrate the legislature's objective to provide a quick and efficient remedy for creditors against defaulting buyers. First, there is nothing in the language of that section or, indeed, elsewhere in the Act, to indicate that the legislature intended the auction to be final *in the absence of legal authority to sell the property.*"

*Id.* (emphasis in original).

In other words, by entering into the forebearance agreement, the creditor and grantor in *Staffordshire* mutually agreed the creditor was not entitled to foreclose (so long as the. creditor did not default on the forebearance agreement). *Id.* at 537, 149 P.3d 150. Enforcing the sale would frustrate the purpose of the OTDA. *Id.* at 542, 149 P.3d 150. The court concluded that voiding the sale "furthers the purpose of the Act to protect the grantor from unauthorized sales without unduly prejudicing the creditors remedy envisioned by the Act." *Id.* at 543, 149 P.3d 150.

The situation here, where the creditor authorized the sale and opposes the grantors' attempt to void the sale, differs from the facts in *Staffordshire*. Indeed, unlike in *Staffordshire*, this case demonstrates the potential for conflict between the dual intentions of the legislature in enacting the OTDA. Here, the grantors argue there was a wrongful sale of their property. On the other hand, voiding the sale would severely undermine the creditor's right to a "quick and efficient remedy against a defaulting grantor." *Id.* at 542, 149 P.3d 150. Again, *Staffordshire* provides guidance.

First, the court limited *Staffordshire* to the unique circumstances, where neither the grantor nor the creditor intended for the sale to proceed, present there. *Id.* Additionally, the court noted that the outcome may well have been different had the trustee's deed been recorded. *Id.* at 543, 149 P.3d 150. The court noted ORS 86.780's "statutory presumption of finality" attaches once the trustee's deed is recorded. *Id.* Ultimately, the court declined to speculate on the affect of the recording of the trustee's deed on the outcome. The court held that under the circumstance present there, "the discovery of the agreement to postpone the sale before the execution of the trustee's deed renders the contract void and plaintiff's remedy is limited to return of the purchase funds and, if applicable, interest. This result properly restores the parties to the positions they would have occupied had the wrongful sale not occurred." *Id.* at 543–44, 149 P.3d 150.

Here, the trustee's deed was recorded, and the "statutory presumption of finality" arose, nearly two years before plaintiffs filed this action challenging the sale. Although this is a matter of first impression in Oregon, the text and context of the OTDA demonstrate that this is an easy case. Voiding the sale under these circumstances would "frustrate the legislature's objective to provide a quick and efficient remedy for creditors against defaulting buyers." *Id.* at 542, 149 P.3d 150. Certainty, "an important component of the nonjudicial foreclosure sale remedy," would be unattainable. In fact, a lack of certainty would cloud every completed trustee's sale, even sales conducted years ago. Parties seeking any certainty would be forced to turn to judicial foreclosures. In short, granting plaintiffs their requested relief would gut the OTDA.

The legislature provided notice and reinstatement provisions to protect grantors against the threat of wrongful foreclosure. *Id.* Voiding the sale here would encourage grantors who receive notice of a sale to sit on their rights, rather than compelling grantors to bring pre-sale challenges to a trustee's sale. Grantors are wise to raise any challenges to non-judicial foreclosure proceedings, including challenges based on ORS 86.735, before the statutory presumption of finality contained in ORS 86.780. Post-sale challenges run the risk of being barred, as is the case here, because the grantors' interest in the property was "foreclosed and terminated" pursuant to ORS 86.770(1).[10]

I note plaintiffs devote the majority of their Amended Complaint and Response to attacking the history of MERS and the practice of securitization of home loans. I share many of those concerns, as discussed in *Hooker v. NW Trustee Services, Inc.* 2011 WL 2119103 at *5–7 (D.Or.). *Hooker* does not apply here. *Hooker* dealt with a pre-sale challenge to a non-judicial foreclosure sale. This case turns on the application of ORS 86.770, which was not at issue in *Hooker,* and post-sale remedies available to the grantor of a deed of trust who received notice of the sale, which I had no need to discuss in *Hooker.* For the same reasons, and despite plaintiffs' strenuous arguments to the contrary, the Oregon Court of Appeals opinion in *Niday* is inapplicable to the facts at issue here.[11]

## CONCLUSION

Defendants' motion to dismiss (# 25) and request for judicial notice (# 28) are GRANTED. This action is dismissed, with prejudice.

IT IS SO ORDERED.

---

**10.** Nothing in this opinion implies courts are not free to set aside a trustee's sale on equitable grounds, or upon any acts of bad faith by the trustee or creditor. Such circumstances are not present here and I decline to speculate on when such scenarios may arise.

**11.** As noted, after oral argument in this case, the Oregon Supreme Court issued an opinion in *Niday.* 353 Or. 648, 302 P.3d 444.